Tony Daniel **PARKER**, Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

No. 01–98–01149–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 23, 1999.

Carlos A. Peniche, Houston, for appellant.

Brian M. Chandler, Ronald Paul Schramm, Ramey & Chandler, P.C., Houston, for appellee.

Panel consists of Justices HEDGES, ANDELL, and DUGGAN (Retired).*

\* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals for the First District of Texas at Houston, participating by assignment.

## OPINION

LEE DUGGAN, Jr., Justice (Retired).

This Court affirmed the trial court's judgment on July 22, 1999, and ordered sanctions against appellant. Rehearing was granted on appellant's motion, and the July 22, 1999, opinion is withdrawn. We substitute this opinion in its stead. This opinion differs only in the amount of sanctions imposed.

This is an appeal from the granting and denial of cross-motions for summary judgment. We affirm the trial court's judgment. Further, we levy sanctions against appellant's attorney, Carlos Peniche, who in succession: (1) wrongfully endorsed a co-payee's name on a settlement check; (2) sued the payor, State Farm, for acting to prevent the consequences of his own misconduct; and (3) frivolously appealed the trial court's judgment against his client. Our levy of sanctions deals solely with counsel's third act of misconduct, the frivolous appeal.

### Facts and Procedural History

Appellant, Tony Daniel Parker, was involved in an automobile collision on March 3, 1995, with Kenneth Alvis, who was insured by appellee, State Farm Mutual Automobile Insurance Company ("State Farm"). Parker initially retained the Law Offices of Mae Nacol & Associates, P.C. ("Nacol & Associates") to represent him in an action against Alvis for personal injuries. Through Nacol & Associates, State Farm offered to settle Parker's claims against Alvis for $10,000. Parker rejected the offer. Nacol & Associates withdrew from its representation of Parker and so notified State Farm on August 26, 1996.

Parker then retained Carlos Peniche as his attorney on February 13, 1997. State Farm sent a letter to Peniche on February 18, 1997, informing him that the $10,000 offer "for full and final settlement" was still on the table. Peniche and State Farm

agent David Hamilton exchanged a series of faxed letters concerning Nacol & Associates' letter notice to State Farm claiming a lien for attorney expenses as well as possible medical provider liens totaling $11,370.90. Hamilton suggested that Peniche contact Nacol & Associates directly about the liens, and repeated State Farm's $10,000 offer in full and final settlement. On February 26, 1997, Peniche faxed State Farm a three-page letter strenuously expressing his opinion that the liens were invalid. In the letter, he accepted State Farm's offer of $10,000 "in full settlement," and requested a settlement check without Nacol & Associates as a payee.

On February 28, 1997, State Farm sent a letter to Peniche enclosing a "RELEASE" to be executed by Parker and a settlement check in the amount of $10,000. The settlement check was payable to Tony Parker, Attorney Carlos A. Peniche, and Nacol & Associates. Parker executed the release on March 3, 1997, and Peniche's office forwarded it to State Farm. However, without permission, Peniche endorsed Nacol & Associates' name to the settlement check,[1] and deposited it into his trust account.

Mae Nacol became aware of the unauthorized signature and executed an affidavit of forgery stating she did not authorize Peniche to endorse the check on her firm's behalf. Nacol forwarded the affidavit to State Farm, which in turn notified its bank, Bank One, of the improper signature. Bank One then contacted Frost National Bank, Peniche's bank, which removed the $10,000 from Peniche's account and returned it to Bank One. State Farm then filed an interpleader action and placed the $10,000 sum into the registry of the 234th District Court of Harris County, Texas.

Represented by Peniche as his attorney, Parker sued State Farm for breach of contract and wrongful conversion. State Farm filed a motion for summary judg-

ment, and Parker filed a cross-motion for summary judgment. The trial court granted State Farm's motion and denied Parker's cross-motion. In eight points of error, Parker contends the trial court erred in granting State Farm's motion for summary judgment and denying his cross-motion. In one cross-point, State Farm asks us to impose sanctions against Peniche for bringing a frivolous appeal.

### Summary Judgment Standard of Review

Summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Lawson v. B Four Corp.,* 888 S.W.2d 31, 34 (Tex.App.—Houston [1st Dist.] 1994, writ denied). In reviewing a summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Randall's Food Mkts.,* 891 S.W.2d at 644; *Lawson,* 888 S.W.2d at 33. We will take all evidence favorable to the nonmovant as true. *Lawson,* 888 S.W.2d at 33. As movant, the defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex. 1991); *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied). After the defendant produces evidence entitling it to summary judgment, the burden shifts to the plaintiff to present evidence creating a fact issue. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996).

### Summary Judgment in Favor of State Farm

#### Breach of Contract

■ State Farm's motion for summary judgment asserted it was entitled to judg-

---

1. Peniche admits in his summary judgment affidavit and in his appellate briefs that he endorsed the check without Nacol & Associates' permission.

ment on Parker's breach of contract claim because it fully complied with the terms of the March 3, 1997 release executed by Parker. Parker's response and cross-motion argued that there was an earlier oral agreement between State Farm and Peniche not to include Nacol & Associates on the settlement check, and State Farm breached the agreement when it named Nacol & Associates as a payee on the check. We disagree with Parker's position.

To succeed on his breach of contract claim, Parker must show: (1) the existence of a valid contract; (2) that he performed his obligations under the contract; (3) that State Farm failed to perform its obligations under the contract; and (4) that he was damages as a result of State Farm's breach. *See Hussong v. Schwan's Sales Enter. Inc.*, 896 S.W.2d 320, 326 (Tex. App.—Houston [1st Dist.] 1995, no writ). The record shows no evidence of the first element of a breach of contract, *i.e.*, the existence of a valid contract not to include Nacol & Associates as a payee of the settlement check.

Prior to signing the release, Peniche and State Farm exchanged a flurry of correspondence regarding Peniche's concerns about including Nacol & Associates on the settlement check.[2] State Farm advised Peniche that he should contact Nacol & Associates regarding any interest the latter might claim in the settlement proceeds. Peniche did not do so. Instead, he faxed a letter to State Farm accepting its settlement offer. However, still not knowing if State Farm planned to include Nacol & Associates on the settlement check, Peniche suggested "that if you insist on including Mae Nacol's firm on the check, that you issue two checks, one for $362.07 with the Mae Nacol firm's name on it and the other for $9,637.93 without the Mae Nacol firm's name on it." State Farm told Peniche that State Farm did not want to become involved in a dispute between Nacol & Associates and Peniche, and that Nacol & Associates would be included on the check.

Peniche's own affidavit and letter exhibits, attached as support to Parker's Response to State Farm's Motion for Summary Judgment, show the progression of the negotiations and demonstrate that no such agreement existed. On February 18, 1997, State Farm wrote Peniche that its previous offer of $10,000 "in full and final settlement," made to Parker through Nacol & Associates was still open.

On February 24, 1997, Peniche wrote State Farm stating, in pertinent part:

As I explore ways to make that [$10,000] offer work, I need clarification from you. You expressed concern as to whether [Nacol & Associates] claims any interest. *I say none at all.*

. . .

*Before I spend a lot of time trying to make $10,000 work, I need to know if you are going to limit the payees to myself and Mr. Parker.* If you are not, then I would like to know who else you plan to put on such a check and why.

. . .

*Please let me hear from you soon as I must decide upon the trying to make $10,000 work or filing suit before the statute of limitations runs.*

(emphasis added). This quoted language shows clearly that Peniche understood that there was no agreement not to include Nacol & Associates on the settlement check before this time.

On February 25, 1997, State Farm sent Peniche several copies of Nacol & Associates' letters dated approximately one year earlier, February 27, 1996. The first, addressed to State Farm, stated that Nacol

---

2. State Farm advised Peniche that Nacol & Associates was claiming a lien for costs and expenses. On August 27, 1996, Nacol wrote State Farm advising it that she no longer represented Parker, and that she was releasing any interest in Parker's claim "subject only to retaining a lien for costs and expenses, and subject to the payment of medical providers who have notified us of their medical liens and/or assignments of at least $11,373.90."

& Associates "is releasing any interest [in Parker's case] ... *subject only to retaining a lien for costs and expenses, subject to the payment of medical providers who have notified us of their medical liens and/or assignment of benefits to them in the total lien amount of $11,370.90.*" (emphasis added).

On February 26, 1997, Peniche wrote State Farm that he had received documentation of Nacol & Associates' expenses of $362.07. He does not claim, either in the letter or in his later affidavit opposing State Farm's motion for summary judgment, that Nacol & Associates agreed to satisfy its claimed lien by receipt of this amount. He then states that "after conferring with my client, he has agreed to accept your offer of $10,000 in full settlement of his claims against your insured." Peniche continued: "*I request that if you insist on including [Nacol & Associates'] name on the check, that you issue two checks, one for $362.07 with [Nacol & Associates'] name on it and the other for $9,637.93 without [Nacol & Associates'] name on it.*" (emphasis added). Such "acceptance" by Parker comes after Peniche's and Parker's awareness of the possible lien claims by Nacol & Associates and medical providers. Peniche does not indicate that the $10,000 in "final settlement" means without liens. Peniche's "request" for separate checks further indicates that no agreement had been made before this time, February 26, 1997, not to include Nacol & Associates on the settlement check.

In his February 27, 1997 letter to State Farm, Peniche forwarded numerous documents and stated his own legal opinion as to why he believed State Farm owed no duty to pay liens or claims urged by Nacol & Associates or the named health care providers. His closing paragraph concludes:

Now that I have reviewed the entire [Nacol & Associates'] file again, just to address this matter, I feel more than justified in demanding that [Nacol &

Associates] not be placed on any settlement check. Please let me know if I have addressed your concerns. Otherwise, I will assume that you will be sending me a release and settlement check, with only my name and that of Mr. Parker on it, in the very near future.

While such language indicates Peniche's own opinion and preference that Nacol & Associates should not be included, his arguments show that there was no agreement between himself and State Farm on the matter.

State Farm's reply letter of February 28, 1997 advised Peniche as follows:

Be advised that this offer of $10,000 is conditioned upon the release being executed by March 3, 1997. If this condition is not met prior to that date, our offer will be withdrawn.... As you know, it is not State Farm's position to determine the relative amount of interest that either attorney involved in this case carries. We have been advised by Mae Nacol that they carry an interest in the amount of $11,373.90. This appears to be a matter that needs to be resolved between both attorneys and the client involved in the case, not State Farm.

By a separate letter of that date, State Farm forwarded Peniche the settlement check and the form of release to be executed by Parker, Peniche, and Nacol & Associates.

We have carefully reviewed the entirety of Parker's response to State Farm's motion for summary judgment, as well as the affidavit and exhibits attached thereto. Nothing in any item filed creates a fact issue as to whether there was an agreement to exclude Nacol & Associates from the settlement check. Because no fact issue exists, the trial court did not err in granting summary judgment for State Farm on Parker's breach of contract claim, and in denying Parker's cross-motion.

We overrule Parker's first and seventh points of error.

■ In his second point of error, Parker argues the trial court erred in granting State Farm's motion for summary judgment because State Farm had no duty to protect the interests of a third party. He opines that "as a matter of public policy, Texas law should not permit convoluted claims of liens and assignments by outside third parties to hinder the settling of legal disputes." Parker is correct that State Farm had no duty to a third party claimant. *See Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 150 (Tex.1994). However, he cites no authority for his contention that the absence of such a duty somehow precluded State Farm, as offeror, from undertaking a settlement with both the plaintiff and possible lien claimants, and from including such claimants on the settlement check.

We overrule Parker's second point of error.

### Wrongful Conversion

■ State Farm asserts it was entitled to summary judgment on Parker's wrongful conversion cause of action because it did not exercise wrongful dominion or control over the settlement proceeds. Parker argues conversely that State Farm wrongfully exercised dominion and control over the settlement proceeds by, first, including Nacol & Associates on the settlement check, and second, by causing its bank to remove the $10,000 from Peniche's account. We disagree with Parker.

■ To constitute a conversion, there must be an unauthorized and wrongful assumption and exercise of control and dominion over the personal property of another, to the exclusion of or inconsistent with the owner's rights in the property. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex.1971). Parker acknowledges that, having now deposited the settlement funds into the registry of the court, State Farm is not currently exercising control or dominion over the settlement proceeds. However, he contends State Farm's actions before it deposited the money into the registry raise a fact issue on his wrongful conversion claim. We disagree.

Nothing in the record shows that State Farm ever exercised wrongful dominion and control over the settlement proceeds. To the contrary, the only wrongfully gained control of the settlement proceeds occurred as a result of Peniche's unauthorized endorsement and deposit of the settlement check. Had Peniche's deposit been allowed to remain, Nacol & Associates would have been cut out of the settlement State Farm intended in its offer, and State Farm would have lost its ability to settle the entire case, including possible attorney and medical liens, for the $10,000 it offered.

State Farm properly notified its bank when it learned of Peniche's apparent forgery. *See generally* TEX. BUS. & COM.CODE ANN. § 4.406 (Vernon 1994) (outlining a bank customer's responsibility to report unauthorized signatures). State Farm's bank then notified Peniche's bank, which removed the money from Peniche's account. State Farm owned the settlement funds tendered until the release was executed and the check was properly endorsed. The fact that State Farm never asserted any ownership of the settlement proceeds after the false endorsement is evidenced by its filing of an interpleader action and depositing the money with the registry of the court. *See Dolenz v. National Bank of Texas at Fort Worth*, 649 S.W.2d 368, 370 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.) ("Before there can be a conversion, there must be an intent on the part of the defendant to assert some right in the property.").

Because State Farm did not exercise wrongful control or dominion over the settlement proceeds, but tendered the funds into the court's registry, the trial judge properly dealt with Parker's wrongful conversion claim by granting State Farm's motion for summary judgment and denying Parker's cross-motion.

We overrule Parker's third, fourth, fifth, sixth, and eighth points of error.

### State Farm's Request for Sanctions

▇ In a single cross-point, State Farm asks this Court to impose sanctions against Peniche for bringing a frivolous appeal. We ordered Peniche to file a response to State Farm's request for sanctions, and he has complied.

We note at the outset that all of Peniche's arguments ignore or trivialize his own misconduct in making the unauthorized endorsement of Nacol & Associates' name on the settlement check. Incredibly, he argues that his actions were necessary "self-help." He goes so far as to ask this Court to rule that his signing of Nacol & Associates' name was proper and necessary to remove an "illegitimately named payee." [3]

▇ Even if State Farm had breached some alleged oral settlement agreement, Peniche was still not justified in making the unauthorized endorsement of another lawyer's name. Peniche's actions were not only contrary to his responsibilities as a licensed Texas attorney, but appear to be forgery, a criminal act.[4] *See* TEX. DISCIPLINARY RULES OR PROF'L CONDUCT 8.04(a)(2)-(3), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp.1997) (TEX. STATE BAR R. art. X, § 9) (stating that a lawyer shall not commit any criminal act that adversely reflects on his trustworthiness, honesty, or fitness as a lawyer, or engage in conduct involving dishonesty, fraud, or deceit).

Texas Rule of Appellate Procedure 45 authorizes a court to award the prevailing party "just damages" if it determines that an appeal is frivolous.[5] For damages to be awarded here, the record must clearly show that Peniche had no reasonable expectation of reversal, and that he did not pursue this appeal in good faith. *See Finch v. Finch*, 825 S.W.2d 218, 226 (Tex. App.—Houston [1st Dist.] 1992, no writ). To make this determination, we must examine the case from Peniche's point of view at the time the appeal was filed and decide whether he had any reasonable grounds to believe the case would be reversed. *See Hicks v. Western Funding, Inc.*, 809 S.W.2d 787, 788 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

### Did Peniche Have a Reasonable Expectation of Reversal?

Peniche contends he had a reasonable expectation of reversal because Parker had an enforceable oral settlement agreement with State Farm not to put Nacol & Associates on the settlement check.

---

**3.** Peniche states that "[w]ith such a rule in place, a payor such as State Farm could cite that rule to a 'claimant' such as the Nacol firm as justification for refusing to cause a charge back on the endorsed instrument, which would have the more desirable affect of directing the disputants towards one another instead of the payor." This argument ignores both (1) State Farm's right to control its own settlement offer by including all claimants, including possible lien holders, and (2) the predictable litigation that would follow.

**4.** *See* TEX. PENAL CODE ANN. § 32.21 (Vernon 1994) (outlining the elements of forgery). Peniche argues that his actions were not forgery because he had no intent to defraud Nacol & Associates. He opines that he was justified in making the endorsement because he concluded that Nacol & Associates asserted "bogus medical liens." We are not called on to determine whether Peniche is guilty of forgery. However, his conduct demonstrates the intent to defraud necessary to sustain a forgery conviction. *See Diggs v. State*, 928 S.W.2d 756, 758 (Tex.App.—Houston [14th Dist.] 1996, no pet.) (finding defendant's desire to deprive party of interest in altered check is sufficient to establish intent to defraud).

**5.** Rule 45 provides:
> If the court of appeals determines that an appeal is frivolous, it may—on motion of any party or on its own initiative, after notice and a reasonable opportunity for a response—award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.

TEX.R.APP. P. 45.

We found earlier that such an agreement did not exist as evidenced by: (1) Peniche's own affidavit, which conclusively shows the disagreement between himself and State Farm about including Nacol & Associates on the check; and (2) the signed settlement release executed by Parker and Peniche. Peniche asserts that Parker complied with the alleged agreement by releasing State Farm's insured, Alvis. He ignores the fact that Nacol & Associates' approval was also required, and that he, acting in Parker's and his own interest, wrongfully endorsed Nacol & Associates' name. We hold that Peniche had no reasonable expectation of reversal on his breach of contract claim.

As to Parker's wrongful conversion claim, Peniche argues that State Farm prevented Parker from receiving the settlement proceeds by obtaining Nacol's affidavit of forgery and forwarding it to State Farm's bank. This argument is ludicrous. His underlying assumption appears to be that State Farm was obligated to settle, and that he, representing an offeree, could dictate who was to be included in the settlement. State Farm's actions were necessitated solely because of Peniche's wrongful conduct in endorsing Nacol & Associates' name without authorization. State Farm had a responsibility to notify its bank of the improper endorsement. Peniche requests that we create a rule of law allowing an attorney to endorse a payee's name to a settlement check when the attorney subjectively believes the payee was wrongfully included on the check. The havoc such a practice would present would eliminate finality to settlements and guarantee increased litigation. Understandably, he offers no authority for this proposed rule, which is contrary to the settled law. We find that Peniche had no reasonable expectation of reversal on Parker's wrongful conversion claim.

### Did Parker Pursue this Appeal in Good Faith?

In determining if this appeal was pursued in good faith, we consider: (1) whether Peniche raised well-researched, arguable issues; (2) whether Peniche has shown a conscious indifference to settled rules of law; and (3) Peniche's response to State Farm's request for sanctions. *Texas Employers' Ins. Ass'n v. Armstrong,* 774 S.W.2d 755, 756 (Tex.App.—Houston [1st Dist.] 1989, no writ).

Peniche argues in his response brief that this appeal was brought in good faith because it sought clarification in an unsettled area of the law—the duties lawyers have who send letters of protection to medical providers during their representation of a personal injury victim. This argument ignores the issues presented on this appeal: (1) whether Parker had an agreement with State Farm not to include Nacol & Associates on the settlement check; and (2) whether State Farm wrongfully converted the settlement proceeds. Whether State Farm or Nacol & Associates owed medical providers a duty is irrelevant to the disposition of this appeal. State Farm made the offer it chose to make, and Parker was not obligated to accept it. As David Hamilton said in State Farm's February 28, 1997 final letter, "perhaps this would be better resolved ... in the courtroom ..." Peniche has presented no well-researched, arguable issue to this Court showing why he should seek review of the trial court's grant of summary judgment in favor of State Farm. *Cf. Bradt v. West,* 892 S.W.2d 56, 79 (Tex.App.—Houston [1st Dist.] 1994, writ denied) ("No litigant has the right to put a party to needless burden and expense or to waste a court's time that would otherwise be spent on the sacred task of adjudicating the valid disputes of Texas citizens."). We find that Peniche has not brought this appeal in good faith.

### Damages

We are authorized by Rule 45 to grant State Farm just damages. TEX.R.APP. P. 45. State Farm did not request a specific amount of damages for responding to this frivolous appeal. However, Peniche's

statements on attorney's fees suggests an answer. In his summary judgment affidavit, he states:

> After explaining to [Parker] his options and obligations with regard to his medical bills, I agreed to cut my fee to 25%, rather than my taking the time to try to talk to the 10 different care providers who I believe must have previously given Ms. Nacol a difficult time in making the $10,000 offer work out.

In his original brief, Peniche states that Parker has hired him at $175 per hour to represent him in this suit. We find that $2,500, or the fee Peniche agreed to take in the negotiated settlement underlying this frivolous appeal, is a just and reasonable amount of damages.

We sustain State Farm's cross-point and order Carlos A. Peniche to pay State Farm $2,500 in damages.

We affirm the judgment of the trial court.