# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 10, 2001

## OMAWALI ASHANTI SHABAZZ, A/K/A
## FRED E. DEAN v. DONAL CAMPBELL, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 99-2160-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2000-01780-COA-R3-CV - Filed July 19, 2001**

---

Appellant, a prison inmate, filed suit under the Tennessee Public Records Act against the Commissioner of the Department of Corrections and others seeking disclosure to him of various records alleged to be public records, together with injunctive relief.  The Chancellor dismissed the complaint with prejudice and we affirm the Chancellor.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and PATRICIA J. COTTRELL, J. joined.

Omawali Ashanti Shabazz, a/k/a Fred E. Dean, Petros, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General and Michael W. Catalano, Associate Solicitor General; Darrell G. Townsend and Derrick C. Smith, Nashville, Tennessee, for the appellees, Donal Campbell, et al.

### OPINION

Fred E. Dean filed suit July 30, 1999, in the Chancery Court of Davidson County, Tennessee, against Donal Campbell, Commissioner of the Tennessee Department of Corrections; Bob Bradford, Director of Health Services for TDOC; Ricky Bell, Warden of Riverbend Maximum Security Institution; Leon Olenick, Health Administrator at Riverbend Maximum Security Institution; Prison Health Services, Inc., a health care provider under contract with TDOC; the Institutional Warden at Lauderdale County Correctional Center; Jim Blankenship, Health Administrator at Lauderdale County Correctional Center; David G. Mills, Warden of Brushy Mountain State Penitentiary, and David P. Rogowski, acting Health Administrator at Brushy Mountain State Penitentiary, under the Tennessee Public Records Act seeking the production and delivery to him of various alleged public records.

On February 16, 2000, the Chancellor entered a Memorandum and Order providing:

Tennessee Code Annotated section 10-7-505 provides that any citizen who has requested personal inspection of a state, county or municipal record as provided in Tennessee Code Annotated section 10-7-503 and whose request has been in whole or in part denied by an official is entitled to petition the chancery court for the county in which the records sought are situated. Section 10-7-505(b) provides that the chancery court, upon the filing of the petition and the request of the petitioning party, shall issue an order requiring the defendant to immediately appear and show cause why the petition should not be granted.

In this case the petitioner, an inmate incarcerated at Brushy Mountain Correctional Complex, has filed a petition asserting that he has been denied access to records in violation of the Tennessee Public Records Act.

Before the Court are several motions: the petitioner's motion to set a hearing for injunctive relief; the petitioner's motion to file a supplemental complaint to add causes of action against two respondents: Sam DiNicola, director of training at the Tennessee Correction Academy, and the director of accreditation/compliance for the TDOC. Also before the Court is the motion of the respondents to dismiss.

The Court has reviewed the materials which the petitioner sought disclosure of under the Public Records Act. The Court finds that the requests numbered 5 through 26, 28 through 32 (the second request numbered 32) and request number 33 are not requests for inspection of a state, county or municipal record but, are instead, questions or interrogatories which are not required to be answered and are not rights provided under the Public Records Act.

However with respect to the petitioner's requests 1, 2, 3, 4, 27 and 32 (the first request numbered 32), the Court requires the respondents to answer in writing, on or before March 31, 2000, why the petition as to those records should not be granted. Additionally, the respondents need to provide the Court with any argument and legal authority on whether the petitioner has a right to have the documents forwarded to the prison facility to view them before he determines which ones he wants copied or whether the only right the petitioner has under the Public Records Act, because he is incarcerated and cannot go to the place where the records are held to view them, is to pay for copies of the documents and have them sent to him without first being allowed to view the documents.

Consistent with the foregoing determination by the Court, the Court grants the respondents' motion to dismiss as it pertains to petitioner's requests for inspection numbered 5 through 26, 28 through 32 (the second request) and 33 on the grounds that the petitioner has failed to state a claim as to those requests because they

are not records but are instead questions or interrogatories. The Court denies the respondents' motion to dismiss as to petitioner's requests 1 through 4, 27 and 32 (the first request number 32).

The Court denies the petitioner's request for a hearing for injunctive relief, instead having required the respondents to state in writing why the petition should not be granted as to requests 1 through 4, 27 and 32 (the first request number 32).

Additionally, the Court denies the petitioner's motion to file a supplemental complaint against two additional respondents. The reason for the denial is that such a complaint would be futile because those respondents do not have sufficient connection with furnishing records so as to be a respondent party under the Tennessee Public Records Act.

It is so ORDERED.

On June 8, 1999, Appellant had filed a request for what he termed "public records" with the state defendants with requests for disclosure as follows:

1. Copies of my institutional segregation unit record sheets for December 18, 1996 through March 22, 1997.

2. Copies of the unit administrative segregation encounter logs for December 18, 1996 th[r]ough March 22, 1997.

3. Copies of the quality improvement reviews for 1996-98, that were submitted to the Statewide Quality Improvement Coordinator during 1996-98.

4. Please provide a copy of the quality improvement reviews for 1996-98 that were submitted to each of the named institutions, institutional improvement committee/person.

5. Please provide the names and duties of the Director of Nursing who was employed as such at each institution mentioned in this request from 1996-98.

6. Please provide the names and duties of the charge Nurse who was employed as such at each institution mentioned in this request from 1996-98.

7. Please provide any and all policies, protocols, memorandum, post-orders, directives, or any other document that sets forth the procedure

that was used during 1996-98, to insure that an inmate received his medication according to an [sic] physician's treatment plan at each institution mentioned in this request.

8.      Please provide a detailed description of what the Institutional Warden and Health Administrator did to insure that inmates were provided with adequate medical care at each institution mentioned in this request during 1996-98. If this information is contained in any document, please produce.

9.      Please produce any and all documents, policies, protocols, memorandums [sic], post-orders, directives, or any other document, that would show the training that nursing staff received in 1996-98 to effectively provide medical services in a prison setting at each institution mentioned in this request.

10.     Please produce any and all documents, policies, protocols, memorandums [sic], directives or post-orders that describe the procedure that was used during 1996-98, to ensure that new inmates, and/or transit inmates received their prescribed medications according to the physician's treatment plan at each institution mentioned in this request.

11.     Please describe the procedure that was used during 1996-98, by prison officials to ensure that medical contracting services were providing adequate medical care at each of the institution [sic] mentioned in this request.

12.     During 1996-98, who were the nurses responsible for bringing medications to segregated inmates at each institution mentioned in this request. If these names are set forth in any logs, schedules, or other documents, please produce.

13.     Please provide the names and duties of the Cronic [sic] Care Nurses who were assigned at each institution mentioned in this request during 1996-98.

14.     Please provide the names and duties of the Institutional Continuous Improvement Coordinator, or other designated registered nurses serving as Tuberculosis [C]ontrol Coordinator during 1996-98 at each institution mentioned in this request.

15. Please provide what training medical staff persons received in 1996-98 by PHS, or either of the institutions mentioned in this request, regarding Tuberculosis prevention/infection control. If this information is contained in any document, please provide.

16. Please describe exactly what the Institutional Continuo[u]s Quality Improvement Coordinator did to ensure that an inmate transferred to [from] one institution to another receives his Tuberculosis medication uninterrupted, at each institution mention[ed] in this request. If this information is set forth [in] any document for 1996-98, please produce.

17. What were the PHS, or either of the institutions mention[ed] in this request, protocols for dispensing Tuberculosis preventive [sic] medication. If this information is set forth in any document for 1996-98, please produce.

18. In 1996-98, what were the protocols for nursing supervision at each of the institutions named in this request. If this information is set forth in any document please produce.

19. In 1996-98, what were the protocols for transferring medications from one institution to the next, when an inmate is transferred at each institution named in this request. If this information is set forth in any document, please produce.

20. Who was responsible at each institution named in this request for establishing medical protocol during 1996-98. If this information is contained in any document, please produce.

21. Who was responsible at each institution named in this request for implimenting [sic] medical protocol during 1996-98. If this information is contained in any document, please produce.

22. Who was responsible at each institution named in this request for enforcing medical protocol during 1996-98. If this information is contained in any document, please produce.

23. Please produce directives, protocols, guidelines or decisions promulgated at each institution named in this request that pertain to Tuberculosis control, distribution of Tuberculosis medication, and any other documents promulgated during 1996-98, at each institution named in this request, as it pertains to Cronic [sic] Care Inmates.

24. Please produce any documents that establish who was the final decision making authority over medical services at each institution named in this request, during 1996-98.

25. What training, if any, did medical personnel working at the institutions named in this complaint receive at the Tennessee Correction Academy during 1996-98. If this information is set forth in any document, please produce.

26. Please [p]roduce when and where medical personnel at each institution named in this request, received training/orientation pertaining to TDOC and institutional policies pertaining to health case services provided to inmates during 1996-98. If this information is contained in any document, please produce.

27. Please produce a copy of the TDOC Tuberculosis/Prevention Guidelines Manuel [sic].

28. Who on the institutional level was responsible at each of the institutions named in this request for training and supervising nursing staff in their daily duties during 1996-98. If this information is contained in any document, please provide.

29. Who on the institutional level [w]as responsible at each of the institutions named in this request for filling a doctor's order for prescribed medications. If this information is in any document, please produce.

30. Please provide a detailed description of the duties of the Health Administrator, Nurse Practitioner, Nurse Supervisors and nursing staff employed during 1996-98, at the institutions named in this request. If these duties are set forth in any document, please produce.

31. Please provide a copy of the following nurses registration/license: Donna Max; Sheila Moffatt; Yolanda Taylor; Mary Richard; Marilyn McDougal; Christian Boettcher; Angie Weir; Sandra Green.

32. Please provide a copy of any and all Prison Health Services, Inc., policies, protocols, directives, memorandums [sic]; decisions; and/or any other document promulgated by Prison Health Services, Inc., that pertains to: (a) distribution of medications, (b) sick call procedures, (c) medical emergences [sic], (d) training of medical staff, (e) record

keeping, (f) tuberculosis treatment and prevention, (g) supervision of medical staff, and (h) cronic [sic] care inmates.

33.     Please provide the name, position and duties of the person(s) at Prison Health Services, Inc., who is responsible for establishing, implimenting [sic] and enforcing policy and/or protocol.

Plaintiff states in his complaint that "all documents are relevant to a pending case before the U.S. District Court, in Nashville, Tennessee. <u>Dean v. Campbell</u>, No. 97-0556 and <u>Dean v. Conley</u>, No. 98-0708."

What the complaint does not disclose is that in each of these two federal cases, all discovery and other proceedings had been stayed by order of the Federal District Court.

It takes only cursory review of the requests by Appellant to see that the Chancellor correctly held that those requests numbered 5 through 26 and numbered 28 through 32, along with request number 33, are simply interrogatories for discovery purposes and not for documents that might be called "public records" under the Public Records Act. Tenn. Code Ann. § 10-7-503, *et seq.*

As to request numbers 1, 2, 3, 4, 27 and 32, the trial court required an answer from the defendants.

Following the response of the defendant, the trial court entered its Final Memorandum and Order of May 5, 1999, holding, in pertinent part:

<u>Request no. 1</u>. Respondents Donal Campbell, Bob Brandford, Ricky Bell, Alton Hesson, Jim Blankenship, David Rogowski and David Mills (hereinafter referred to as "Donal Campbell, et al.") have asserted through counsel that the institutional segregation unit records consist of 62 pages and will be furnished to petitioner upon payment of $12.40 (20¢ per page).

Based upon the foregoing, the Court determines that the petitioner has not been denied access to records in violation of the Tennessee Public Records Act and dismisses the petition as to request no. 1.

<u>Request no. 2</u>. The Court denies the petition for copies of unit administrative segregation and counter logs for December 18, 1996 through March 22, 1997, on the grounds that no such documents as "unit administrative segregation and counter logs" exist.

<u>Request no. 3 and Request no. 4</u>. The Court denies the petitioner's request for copies of the quality improvement reviews for 1996 through 1998 that were submitted to the statewide quality improvement coordinator during those years and

denies copies of the quality improvement reviews for 1996 through 1998 that were submitted to each of the named institutions or institutional improvement committee/persons on the grounds that those documents are confidential pursuant to Tennessee Code Annotated section 63-6-219 and are not public records.

Request no. 27. The Court denies the petition for a copy of the TDOC tuberculosis control/prevention guidelines manual because respondents Donal Campbell, *et al*. have agreed to furnish the manual to the petitioner upon payment of $14.00 (the manual consists of 70 pages and copying costs are 20¢ per page). That agreement establishes that the petitioner has not been denied access to records in violation of the Tennessee Public Records Act.

Request no. 32. The Court denies petitioner copies of registrations and licenses for nurses Donna Max, Sheila Moffatt, Yolanda Taylor, Mary Richard, Marilyn McDougal, Christian Boettcher, Angie Weir and Sandra Green on the grounds that these persons are not State employees and therefore the State does not have personnel files on these persons and does not have custody of their registration/licenses.

Petitioner's Request For a Free Preview of the Documents

The Court additionally determines that should the petitioner seek to obtain certain documents under the Public Records Act that he is required to submit payment for the copies at 20¢ per page and the documents will be forwarded to him. The Department of Corrections has promulgated reasonable rules regarding access to public records for inspection and copying. There are no provisions expressed in the Public Records Act for exceptions to be made for persons who cannot come to the place where the records are kept. Thus, the petitioner is not entitled to view the documents free of charge before requesting copies.

Causes of Action against Prison Health Services, Inc. and Leon Olenick

The Court dismisses the above-captioned action against respondents Prison Health Services, Inc. and Leon Olenick with prejudice on the grounds that Prison Health Services, Inc. is not a governmental entity and is not subject to the requirements of the Tennessee Public Records Act and Leon Olenick is a PHS employee and not a governmental employee subject to the Act. Thus, PHS and Olenick may not be compelled to produce any records pursuant to the Act. The party seeking records bears the burden of proof to show that the business qualifies as a governmental entity to which the Act applies. *Memphis Publishing Co. v. Shelby County Healthcare Corp.*, 799 S.W.2d 225, 228 (Tenn.App. 1990). The petitioner has made [no] showing that PHS qualifies as a governmental entity or that its employee, Leon Olenick, is an employee of a governmental entity.

The holdings of the Chancellor are clearly correct and as to those documents which are indeed public records as found by the trial judge, Appellant is entitled to a copy of same when he pays for such copying in conformance with Tennessee Code Annotated Section 10-7-507. *Tennessean v. Electric Power Board of Nashville*, 979 S.W.2d 297, 303-304 (Tenn. 1998); Tenn. Code Ann. § 10-7-506(a) (1988); *Cammuse v. Davidson County District Attorney, et al.*, 1999 WL 159691 (Tenn.Ct.App. 1999).

The judgment of the trial court is in all respects affirmed with costs assessed to Appellant.

_____
WILLIAM B. CAIN, JUDGE