Edward G. ROBINSON, Appellant,

v.

NATIONAL AUTOTECH, INC. d/b/a
City Garage, Jerry Skaggs and
John Schaefer, Appellees.

No. 05–02–00038–CV.

Court of Appeals of Texas,
Dallas.

July 2, 2003.
Rehearing Overruled Oct. 20, 2003.

Eartha L. Taylor, Attorney & Counselor At Law, Dallas, for appellant.

Shawn W. Phelan, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, for appellee.

Before Justices MOSELEY, LANG, and LAGARDE.[1]

## OPINION

Opinion by Justice LAGARDE (Assigned).

Edward G. Robinson appeals from an adverse judgment in his lawsuit against National Autotech, Inc. d/b/a City Garage (Autotech), Jerry Skaggs, and John Schaefer. In two issues, Robinson contends the trial court erred in granting summary judgment to Autotech and abused its discretion in dismissing his lawsuit against

1. The Honorable Sue Lagarde, Retired Justice of the Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

Skaggs and Schaefer. For reasons set forth below, we affirm the trial court's judgment.

Robinson filed this lawsuit to recover damages for the loss of his toolbox and tools that he had left in Autotech's automotive repair shop after the toolbox was released by Autotech employees to a person claiming to be Robinson. The summary judgment evidence revealed the following undisputed facts. In March 1998, Robinson, an employee of Autotech, took a leave of absence for a work-related injury. He was permitted to leave his toolbox containing his tools on Autotech's premises during his absence. About a year later, while Robinson was still on leave, a person claiming to be Robinson came into Autotech's garage and told Jerry Skaggs, the store manager, he was there to pick up his tools. Autotech employee John Schaefer was also present. Although Skaggs and Schaefer had never met Robinson, they did not question or confirm the man's identity. Schaefer testified the man knew which toolbox was Robinson's without assistance, acted like he knew what he was doing, and did nothing to raise suspicions. It also appeared the man had a set of keys to open the toolbox. Skaggs and Schaefer assisted the man in carrying the toolbox from Autotech's shop and loading it into a truck.

After discovering his toolbox was removed from the shop without his knowledge or consent, Robinson sued Autotech asserting causes of action for conversion, negligence, negligent bailment, and breach of contract. A scheduling order in the case provided that no additional parties could be joined more than six months after the commencement of the case except on motion for leave showing good cause. A year after the lawsuit was filed, however, without obtaining leave of the court, Robinson filed an amended petition adding Skaggs and Schaefer as defendants. Autotech filed a motion for summary judgment on all of Robinson's causes of action asserting both traditional and no-evidence grounds. In separate orders filed the same date, the trial court granted summary judgment to Autotech and dismissed the lawsuit against Skaggs and Schaefer. It is from these orders Robinson appeals.

The standards for reviewing traditional summary judgment under rule 166a(c) are well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). The movant has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Id.* When reviewing a no-evidence summary judgment, however, we use the same legal sufficiency standard used to review a directed verdict. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet). Summary judgment is improper if the nonmovant produces more than a scintilla of evidence sufficient to raise a fact issue on the challenged element. *Id.*

## CONVERSION

Conversion is the wrongful exercise of dominion or control over the property of another in denial of, or inconsistent with, the other's rights in the property. *Morey v. Page*, 802 S.W.2d 779, 786 (Tex.App.-Dallas 1990, no writ) (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex.1971)). Conversion has been defined in various ways. Basically, conversion is a wrongful deprivation of property. *Lone Star Beer, Inc. v. Republic Nat'l Bank of Dallas*, 508 S.W.2d 686, 687 (Tex.Civ.App.-Dallas 1974, no writ). Conversion may be committed against one who has legal possession regardless of the question of title. *Id.* There can be no conversion where the owner has expressly or impliedly assent-

ed to the taking or disposition. *Id.* "To constitute conversion, there must be some repudiation of the owner's right or an exercise of dominion over the property, wrongfully and in denial of or inconsistent with that right; or there must be an illegal assumption of ownership." *Dolenz v. Nat'l Bank of Tex. at Fort Worth,* 649 S.W.2d 368, 370 (Tex.App.-Fort Worth 1983, writ ref'd n.r.e.). A conversion defendant must intend to assert some right in the property to be held liable. *Id.* However, that intent need not be an intent to assert a right of ownership or title; it can be an intent to assert the right of possession.

Dominion is defined as: "in law, power to direct, control, use, and dispose of; right of possession and use...." WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY, UNABRIDGED 544 (2nd ed.1971). And the Texas Penal Code defines "possession" as "actual care, custody, control, or management." TEX. PEN.CODE § 1.07(39) (Vernon 2003).

 Autotech moved for summary judgment on Robinson's conversion claim asserting there was no evidence City Garage illegally assumed or exercised ownership or control over Robinson's toolbox, a necessary element to Robinson's claim for conversion. Autotech also asserted, and provided summary judgment evidence establishing, that an unknown third party, not City Garage or its representatives or employees, converted Robinson's property. Arguing that Robinson waived his claim or was otherwise estopped from asserting his claim, Autotech asserted in its motion for summary judgment and provided summary judgment evidence showing that Robinson acknowledged in writing that he understood that City Garage was not responsible for the loss or theft of his property.

Robinson contends evidence that City Garage employees Skaggs and Schaefer physically assisted the imposter in removing Robinson's toolbox from the garage and loading it into a truck is sufficient to raise a fact issue on the element of wrongful exercise of dominion or control, which is a necessary element for conversion against Autotech. We disagree.

The individual employees Skaggs and Schaefer were dismissed from this lawsuit; Robinson seeks to hold the corporation, Autotech, liable for conversion based on their conduct. Consequently, in order to withstand Autotech's motion for summary judgment, there must be more than a scintilla of evidence that Autotech intended to possess (i.e., exercise dominion or control over) the property in question. The record is devoid of any evidence of this necessary element. Evidence that the City Garage employees, simply as an accommodation, unwittingly assisted the imposter in physically carrying the toolbox from the garage to a truck is not evidence that Schaefer and Skaggs intended to assert any right, possessory or otherwise, over the property. With respect to Autotech's intent to possess (i.e., exercise dominion or control over) the property, the record is absolutely devoid of any evidence that (a) the two City Garage employees were acting within the course and scope of their employment when they assisted the imposter; (b) the employees were authorized by Autotech, either expressly or impliedly, to release the property to, or physically assist, the imposter in the transfer of the toolbox from the garage to a truck; or (c) the corporation Autotech ratified the employees' actions and that ratification was evidence of Autotech's intent to possess (i.e. exercise dominion or control over) the property.

The dissent cites two Houston cases to support the assertion that some defendants have been held liable for conversion even though they never asserted some

right in the converted property. *See Schwartz v. Pinnacle Communications,* 944 S.W.2d 427, 432–33 (Tex.App.-Houston [14th Dist] 1997, no writ), and *Lone Star Ford, Inc. v. Hill,* 879 S.W.2d 116, 121–22 (Tex.App.-Houston [14th Dist.] 1994, no writ). *Schwartz* involved the relocation of telephone equipment that had been leased to a corporation. *Schwartz,* 944 S.W.2d at 431. Pursuant to the lessee corporation's request, the conversion defendant transported the telephone equipment to what he thought was a subsidiary of the lessee, contrary to the lessor's interest in the property. *Id.* at 432. In *Hill,* a car dealership employee had removed some personal belongings from the plaintiff's trade-in vehicle. *Hill,* 879 S.W.2d at 121. When the plaintiff sought to recover the removed property from a vending machine room where it had been placed, several items were missing. *Id.* Unlike the facts before us where there is no evidence that Skaggs and Schaefer were attempting to exercise any dominion or control over the toolbox and tools, the defendants in both *Schwartz* and *Hill* intentionally took possession of the subject property and disposed of it in a way that was contrary to the owner's interest. Consequently, the dissent's reliance on these cases is misplaced.

Absent any evidence that the two City Garage employees intended to possess (i.e., exercise dominion or control over) Robinson's property, and absent any further evidence that the employees' actions were authorized or ratified by the corporation Autotech, the evidence does not rise to such a level that reasonable and fair-minded people would differ in their conclusion that the corporation Autotech converted Robinson's property. Consequently, the trial court was correct in granting summary judgment in favor of the corporation Autotech on Robinson's conversion claim.

## BREACH OF CONTRACT

■ Robinson's breach of contract claim was based on oral conversations Robinson had with Autotech managers authorizing him to leave his toolbox on the premises and assuring Robinson his toolbox would remain safe so long as it remained on Autotech's premises. Autotech asserted it was entitled to summary judgment on Robinson's contract claim because there was no consideration to support any alleged contract. Robinson contends "the relationship maintained between Autotech and Robinson as employer and employee" satisfies the consideration requirement.

■ Consideration is a bargained-for exchange of promises. *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 409 (Tex.1997). Consideration consists of either a benefit to the promisor or a detriment to the promisee. *N. Nat. Gas Co. v. Conoco, Inc.,* 986 S.W.2d 603, 607 (Tex.1998). A contract that lacks consideration lacks mutuality of obligation and is unenforceable. *Fed. Sign,* 951 S.W.2d at 409. The preexisting employer-employee relationship between Robinson and Autotech is not consideration for Autotech's authorization and assurance that Robinson's toolbox would be safe while he was on medical leave. Instead, the record contains no evidence that Robinson gave any promise or other consideration in exchange for Autotech's permission and assurance his tools would be safe. Because there is no evidence of a bargained-for detriment to Robinson as the promisee, or benefit to Autotech as the promisor, there was no valid consideration to support an alleged contract. Accordingly, the trial court did not err in granting summary judgment to Autotech on Robinson's breach of contract claim.

## NEGLIGENT BAILMENT

Autotech moved for summary judgment on Robinson's negligent bailment claim as-

serting Robinson had no evidence the purported bailment was for the mutual benefit of the parties. Robinson argues that because Autotech required him to provide his own tools while working for Autotech and Autotech permitted him to leave his tools on the premises as an incident of the business, Autotech was a bailee for mutual benefit. Robinson's argument misses the mark.

A bailment is for the mutual benefit of the parties as long as the property of the bailor is delivered to and accepted by the bailee as an incident of a business in which the bailee makes a profit. *See Andrews v. Allen*, 724 S.W.2d 893, 895 (Tex. App.-Austin 1987, no writ).

Although Robinson would have us focus on the reason he brought his toolbox to Autotech at the time he was employed, we conclude the relevant inquiry should be directed to the circumstances existing at the time Robinson decided to leave his tools at Autotech before his extended absence from work. The record before us is clear that Autotech derived no benefit from permitting Robinson to leave his tools on its premises while he was out on medical leave. Contrary to Robinson's position, permitting Robinson to leave his toolbox on the premises while he was not working cannot be considered incident to Autotech's business. Instead, it was merely an accommodation to Robinson. There is no evidence that Autotech derived any benefit from this purported bailment. Accordingly, the trial court properly granted summary judgment against Robinson on his negligent bailment claim.

### NEGLIGENCE

With respect to Robinson's negligence claim, Autotech asserted it was entitled to summary judgment because there was no evidence Autotech had any duty to Robinson concerning his toolbox. Robinson contends the following evidence raised a fact issue as to whether Autotech assumed a duty to safeguard his toolbox: (1) the existence of the employer-employee relationship between Autotech and Robinson, (2) Autotech's requirement that employees provide their own tools, (3) Autotech's allowing the toolbox to remain on its premises without demanding removal each day, (4) Autotech's allowing Robinson to leave his toolbox on the premises while on medical leave, and (5) Autotech's assurances to Robinson that the toolbox was safe while on its premises.

A legal duty must exist before a defendant can be held liable for negligence. *Reeder v. Daniel*, 61 S.W.3d 359, 364 (Tex.2001). Whether a duty exists under a given set of facts is a question of law. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). Common law negligence rests primarily upon the existence of reasons to anticipate injury and the failure to perform the duty arising on account of that anticipation. *See Wal–Mart Stores, Inc. v. Tamez*, 960 S.W.2d 125, 127 (Tex.App.-Corpus Christi 1997, pet. denied). When deciding whether a common law duty exists, foreseeability and the likelihood of risk are paramount considerations. *Id.* at 130.

In the case before us, there is no evidence that Autotech voluntarily undertook the obligation of safeguarding the toolbox. Robinson has not cited any cases, and we have found none, that would impose such a duty based on the employer-employee relationship or the fact that he was permitted to leave his toolbox on Autotech's premises. Robinson also asserts various Autotech representatives told him his toolbox would be safe while it remained on its premises. There is no evidence that by these statements Autotech assumed an obligation to protect Robinson's tools. In

fact, Autotech's handbook specifically disclaimed any responsibility for the theft, loss, or damage to personal tools. Absent any other affirmative act on the part of Autotech suggesting they assumed such a duty, we will not impose one here. In holding the assurance did not create a duty, we do not decide whether an assurance could ever give rise to a duty but only that on these facts a duty did not arise. To the extent Robinson claims Autotech had a duty to check or confirm the identity of the man claiming to be Robinson to prevent the theft of the toolbox, there is nothing in the record to suggest that, under the facts presented, it was foreseeable Autotech's failure to do so would result in the theft of the toolbox. There was no evidence of prior thefts from the garage and nothing in the record to raise a reasonable person's suspicions about the identity of the man claiming to be Robinson. In fact, it appeared the man had a set of keys to unlock the toolbox. Because we conclude, under the factual circumstances presented, Autotech had no duty to safeguard Robinson's tools, the trial court correctly granted a take nothing summary judgment on Robinson's negligence claim. We resolve Robinson's first issue against him.

■ In his second issue, Robinson contends the trial court abused its discretion in dismissing Skaggs and Schaefer from his lawsuit without notice or a hearing. In support of this contention, Robinson relies solely on *Villarreal v. San Antonio Truck & Equipment,* 994 S.W.2d 628 (Tex.1999). In *Villarreal,* the court addressed the trial court's inherent authority to dismiss a case for lack of diligent prosecution despite the fact that plaintiff had appeared at the dismissal hearing and announced its readiness for trial. *Id.* at 630. Concluding the court's prior notice indicating it would dismiss the case if no appearance or an-

nouncement was made was inadequate notice to dismiss the case under its inherent authority, the court reversed the dismissal. *Id.* at 631–32.

Robinson's lawsuit was not dismissed for want of prosecution. Instead, the trial court dismissed Skaggs and Schaefer from Robinson's lawsuit for failing to comply with a previous court order requiring leave of court before adding additional parties after the specified deadline. We fail to see how the due process concerns addressed in *Villarreal* apply in this case where Robinson attempted to amend his petition without obtaining the necessary leave of court. Because Robinson has failed to establish the trial court abused its discretion in dismissing his lawsuit against Skaggs and Schaefer, we resolve Robinson's second issue against him.

We affirm the trial court's judgment.

Opinion By Justice JIM MOSELEY, concurring and dissenting.

I concur with the majority's dispositions of Edward G. Robinson's breach of contract, negligent bailment, and negligence claims, and of Robinson's issue concerning the dismissal of Jerry Skaggs and John Schaefer from this lawsuit. However, I respectfully dissent from the majority's disposition of Robinson's conversion claim against National Autotech because I disagree with the majority as to what "intent" is necessary to accomplish the intentional tort of conversion.

Conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another which is to the exclusion of, or inconsistent with, the owner's rights. *Williams v. City of Dallas,* 53 S.W.3d 780, 787 (Tex.App.-Dallas 2001, no pet.). In his First Amended Petition, Robinson alleged that, acting through its agents Skaggs and Schaefer, National Autotech converted his

personal property, described as nine tool boxes that had been stacked and bolted together to make one tool box about six feet tall and eight feet long, as well as the tools located inside. Specifically, he alleged Skaggs and Schaefer "wrongfully exercised unauthorized control of [his] property" by two acts: (1) "releasing and authorizing the release of the property to someone other than [Robinson] . . .;" and by (2) "loading and moving [his] property off [National Autotech's] premises and onto the truck of an unknown person."

National Autotech's sole ground for summary judgment on Robinson's conversion claim was that he had no evidence National Autotech "illegally assumed or exercised ownership or control of [Robinson's] property, a necessary element of a claim for conversion." Thus, if Robinson produced more than a scintilla of evidence that National Autotech unlawfully assumed and exercised dominion and control over his personal property, the trial court erred in granting summary judgment on his conversion claim. See TEX.R. CIV. P. 166a(i); *Crocker v. Paulyne's Nursing Home, Inc.*, 95 S.W.3d 416, 419 (Tex.App.-Dallas 2002, no pet.). We review the evidence in the light most favorable to Robinson, the nonmovant, and disregard all contrary evidence and inferences. See *Crocker,* 95 S.W.3d at 419. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994).

Robinson presented evidence that Schaefer and Skaggs were National Autotech's employees; Schaefer helped the imposter remove Robinson's tool box from National Autotech's garage and load it onto Schaefer's truck; and after the imposter returned later in the day with a second truck, Skaggs and Schaefer helped

him move Robinson's tool box from Schaefer's truck onto the second truck. Viewing this evidence in the light most favorable to Robinson and disregarding all contrary evidence and inferences, I would conclude the evidence rises to a level that would at least enable reasonable and fair-minded people to differ on whether National Autotech's employees intentionally exercised dominion or control over the tool box that in fact seriously interfered with Robinson's right to control or possess it. See RE-STATEMENT (SECOND) OF TORTS § 224 cmt. c (1965). Thus, I would conclude the trial court erred in granting National Autotech's no-evidence motion for summary judgment on Robinson's conversion claim. See *Crocker,* 95 S.W.3d at 419; *see also* TEX.R. CIV. P. 166a(i).

The majority concludes to the contrary. Citing *Dolenz v. National Bank of Texas at Fort Worth,* 649 S.W.2d 368, 370 (Tex. App.-Fort Worth 1983, writ ref'd n.r.e.), the majority defines the requisite intent for conversion as an intent to assert some right, including the right of possession, in the property being converted. *Accord Parker v. State Farm Mut. Auto. Ins. Co.,* 4 S.W.3d 358, 363 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *White–Sellie's Jewelry Co. v. Goodyear Tire & Rubber Co.,* 477 S.W.2d 658, 662 (Tex.Civ.App.-Houston [14th Dist.] 1972, no writ); *Powell v. Forest Oil Corp.,* 392 S.W.2d 549, 552 (Tex. Civ.App.-Texarkana 1965, no writ). On that basis, the majority concludes Robinson failed to produce a scintilla of evidence that National Autotech intended to assert a right in Robinson's tools and tool box.

I do not agree the intent necessary for conversion is limited to the intent to assert some right in the property converted. Other Texas courts have held defendants liable for conversion even though the defendants never asserted some right in the property converted. *See e.g., Schwartz v.*

*Pinnacle Communications*, 944 S.W.2d 427, 432–33 (Tex.App.-Houston [14th Dist.] 1997, no writ) (defendant liable for conversion when he incorrectly delivered the plaintiff's property to an unrelated company even though he thought he was delivering the property to the plaintiff's subsidiary with the plaintiff's permission); *Lone Star Ford, Inc. v. Hill*, 879 S.W.2d 116, 121–22 (Tex.App.-Houston [14th Dist.] 1994, no writ) (defendant liable for conversion when its employee placed plaintiff's property in store room on defendant's property and some of the property ended up missing).

Although *Schwartz* and *Lone Star Ford* do not expressly state what intent was required for a defendant to be liable for conversion, the purpose behind the tort of conversion is a guide to the type of intent required. Conversion is designed to protect against interference with a person's possessory interest in personal property. *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex.1981); *see also Killian v. Trans Union Leasing Corp.*, 657 S.W.2d 189, 192–93 (Tex.App.-San Antonio 1983, writ ref'd n.r.e.) (conversion "is concerned with possession, not title"). Accordingly, the requisite intent is not the intent to assert some right (i.e., some title or right of possession) in the converted property, but rather, the intent "to exercise a dominion or control over [personal property,] which in fact seriously interferes with the right of another· to control [or possess] it." RESTATEMENT (SECOND) OF TORTS § 224 cmt. c. Stated another way, "[t]he intention required is simply an intent to use or dispose of the goods . . . ." *Rensch v. Riddle's Diamonds*, 393 N.W.2d 269, 271 (S.D.1986).

When read in its entirety, even *Dolenz*, cited by the majority, supports this conclusion. There, Dolenz sued a bank for converting personal property that was contained in three truck trailers the bank repossessed. 649 S.W.2d at 369. The bank was unaware the property was in the trailers; when it was discovered, the bank contacted Dolenz to come get his property.

In affirming the judgment in favor of the bank, the Fort Worth Court of Appeals recognized that "[c]onversion is an offense against possession and not title, and has been defined as the unlawful and wrongful exercise of dominion, ownership, or control by one person over the property of another, to the exclusion of the exercise of the same rights by the owner . . . which may be effected by taking actual corporal possession and control over the property of another so as to prevent the owner from exercise of such rights." *Id.* at 370. *Dolenz* also stated, as noted by the majority, that before there can be a conversion, the "conversion defendant must intend to assert some right in the property . . . ." *Id.* However, in ruling for the bank the court emphasized that the critical factor was the absence of any evidence the bank knew it had possession of Dolenz's property.

This conclusion is also consistent with the Restatement (Second) of Torts, which states the following with respect to conversion:

(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

(2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:

(a) the extent and duration of the actor's exercise of dominion or control;

(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;

(c) the actor's good faith;

(d) the extent and duration of the resulting interferences with the other's right of control;

(e) the harm done to the chattel; [and]

(f) the inconvenience and expense caused to the other.

RESTATEMENT (SECOND) OF TORTS § 222A. Thus, the absence of any evidence that National Autotech intended to exert ownership over Robinson's tools may be a factor with respect to whether a conversion occurred, but it is not the only factor and cannot support the entry of a no-evidence summary judgment against Robinson's conversion claim.

National Autotech's argument is, in essence, that it cannot be liable for conversion because there is no evidence its employees did not believe the imposter was actually Robinson. This is contrary to prior holdings of this Court. In *Morey v. Page*, 802 S.W.2d 779, 786 (Tex.App.-Dallas 1990, no writ), we held that "[i]n an action for conversion, it is no defense that the defendant acted in complete innocence and perfect good faith." *Morey* goes on to state that "[a] mistake as to ownership is not a defense to a claim of conversion." *Id.; see also Rensch*, 393 N.W.2d at 271 ("[T]he knowledge or ignorance of the actor as to the ownership has no influence in deciding the question of conversion."). This argument is also contrary to section 222A of the Restatement, as explained in comment d, illustrations 9 and 10: "A ships goods over B carrier, consigned to himself. By mistake B delivers the goods to C. B discovers the mistake immediately and within twenty-four hours recovers the goods from C, and delivers them to A. This is not a conversion." RESTATEMENT (SECOND) OF TORTS § 222A cmt. d, illus. 9. "The same facts as in Illustration 9, except that the goods are not recovered, and remain in

the possession of C. This is a conversion." *Id.* illus. 10.

Although illustrations 9 and 10 set forth a bailment hypothetical, a non-bailor defendant can still be liable for conversion if he incorrectly delivers the plaintiff's personal property to another who is not entitled to immediate possession of it. RESTATEMENT (SECOND) OF TORTS § 235(1) cmt. c; *see Schwartz*, 944 S.W.2d at 432–33. And all the parties concede that the imposter was not entitled to immediate possession of Robinson's tool box.

The majority states "the record is absolutely devoid of any evidence" that: (1) Skaggs and Schaefer were acting within the course and scope of their employment when they helped the imposter remove Robinson's tool box from National Autotech's garage to Schaefer's truck and then to a second truck; (2) National Autotech, either expressly or impliedly, authorized Skaggs and Schaefer to assist the imposter; or (3) National Autotech ratified Skaggs's and Schaefer's actions. Nevertheless, National Autotech did not raise these grounds in its motion for summary judgment. Accordingly, this Court cannot consider or affirm the trial court's judgment based on these grounds because they were not raised in National Autotech's motion. *See Alder v. Laurel*, 82 S.W.3d 372, 375 (Tex.App.-Austin 2002, no pet.) (citing *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993)); *see also Hinkle v. Adams*, 74 S.W.3d 189, 193 (Tex.App.-Texarkana 2002, no pet.) (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339–42 (Tex.1993)).

In summary, although I agree with the majority with respect to affirming the rest of the judgment, I would sustain Robinson's first issue with respect to his conversion claim, reverse the trial court's judgment as to that claim, and remand the case to the trial court for further proceedings.

Because the majority does not do so, I respectfully dissent.