IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 29, 2023 Session

**JOSE MARCUS PERRUSQUIA v. FLOYD BONNER, JR., ET AL.**

**Appeal from the Chancery Court for Shelby County**
**No. CH-22-0820      JoeDae L. Jenkins, Chancellor**
_____

**No. W2023-00293-COA-R3-CV**
_____

This case involves a petition for judicial review filed pursuant to the Tennessee Public Records Act, Tenn. Code Ann. § 10-7-503, *et seq*., after the Shelby County Sheriff and the District Attorney General denied a journalist's request to inspect surveillance video from inside a jail facility. The chancery court denied the petition. The journalist appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Paul R. McAdoo, Brentwood, Tennessee, for the appellant, Jose Marcus Perrusquia.

Jonathan Skrmetti, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Michael M. Stahl, Senior Assistant Attorney General, for the appellee, Steven J. Mulroy, in his official capacity as Shelby County District Attorney General.

R. Joseph Leibovich and Angela M. Locklear, Memphis, Tennessee, for the appellee, Floyd Bonner, Jr., in his official capacity as Shelby County Sheriff.

**OPINION**

**I.   FACTS & PROCEDURAL HISTORY**

This appeal arises from a petition for access to public records and for judicial review pursuant to the Tennessee Public Records Act, Tenn. Code Ann. § 10-7-503, *et seq*. The

petition was filed in the chancery court of Shelby County by Jose Perrusquia, who described himself as a journalist who was reporting on "the use of force by law enforcement officers in Shelby County." The respondents are Floyd Bonner, Jr., in his official capacity as Shelby County Sheriff, and Steven Mulroy, in his official capacity as Shelby County District Attorney General.[1] According to Mr. Perrusquia's petition, he submitted requests to various governmental entities to inspect public records pertaining to a physical altercation that occurred on or about May 29, 2018, between a police officer and an individual who had been arrested. The petition states that the incident occurred inside "201 Poplar," a facility in Memphis that houses the Shelby County Jail and is operated by the Shelby County Sheriff's Office, in a detainee processing area known as the Sally Port. The detainee pled guilty to assault for his part in the altercation with the officer, and the officer was found to have violated administrative regulations of the police department, resulting in a suspension without pay. The petition stated that the Sheriff's Office had delivered its investigative file to the District Attorney General for review, but upon review of the file, the District Attorney General concluded that no criminal charges would be filed against the officer.

Mr. Perrusquia's petition acknowledged that, in response to his public records requests, he had received a Memphis Police Department case summary from the City of Memphis and the Sheriff's case file from the Sheriff's Office. These documents referenced the fact that a video surveillance camera inside 201 Poplar had recorded the incident. As a result, Mr. Perrusquia made a public records request to the Sheriff to review the video from inside the jail. However, the Chief Policy Advisor for the Sheriff's Office responded that the surveillance video would not be provided as it was "protected by the security of governmental buildings and surveillance provisions of the [Tennessee Public Records Act], T.C.A. § 10-7-504."[2] Mr. Perrusquia submitted a separate request to the District Attorney General's Office for any public records it had connected to the incident. The Public Information Officer for the District Attorney General's Office responded by providing the letter the District Attorney General had written to the Sheriff explaining the decision not to prosecute the officer upon review of the file and video. However, the District Attorney General's Office explained that it had "returned the file since there was no prosecution," and "it was all sent back to the sheriff." According to the petition, Mr. Perrusquia requested

---

[1] The suit was originally filed against Mr. Mulroy's predecessor, but Mr. Mulroy was substituted as the named respondent upon being elected to the office of Shelby County District Attorney General, pursuant to Tennessee Rule of Civil Procedure 25.04(1).

[2] Tennessee Code Annotated section 10-7-504(m)(1)(E) provides, in pertinent part:

(m)(1) Information and records that are directly related to the security of any government building shall be maintained as confidential and shall not be open to public inspection. . . . Such information and records include, but are not limited to:

. . .

(E) Surveillance recordings, whether recorded to audio or visual format, or both, except segments of the recordings may be made public when they include an act or incident involving public safety or security or possible criminal activity. . . .

that the District Attorney General's Office "get [the footage] back from the Sheriff and release [it] to me in accordance with the Tennessee Public Records Act." In response, the District Attorney General's Office indicated that it would continue to review its own files to determine whether a copy of the requested video existed, but his request for the District Attorney General's Office to "retrieve records" from the Sheriff's Office in order to make them available was denied. Mr. Perrusquia was informed that the District Attorney General's Office regularly reviews cases with various law enforcement agencies in determining pre-arrest and pre-indictment charging decisions, and during the course of such review it may "access and review records of the law enforcement agency," but the District Attorney General's Office typically does not *retain* those records, as the "brief temporary review of another agency's records does not typically warrant such retention as a part of this Office's function."

Due to these denials of his requests, Mr. Perrusquia's petition set forth two separate claims for relief. First, with respect to both respondents, he alleged "Count I - Failure to Provide Access to Public Records[.]" He asserted that the surveillance footage was a public record and that no exemption applied to permit the respondents to withhold it. Specifically, Mr. Perrusquia contended that the exemption in Tennessee Code Annotated section 10-7-504(m)(1)(E) "is inapplicable" because the requested video fell within an exception for video segments involving possible criminal activity. Mr. Perrusquia further argued that "[p]ursuant to the TPRA, the DA was required to retain the Sheriff's Case File, including the Sally Port Footage[.]" Thus, he argued that both the Sheriff and the District Attorney General should be required to produce the footage to him. Next, the petition asserted "Count II – Failure to Retain Public Records" against the District Attorney General only. Mr. Perrusquia reiterated his claim that the District Attorney General "was required to retain the Sheriff's Case File, including the Sally Port Footage," pursuant to the TPRA. He sought declaratory and injunctive relief in addition to attorney fees. In particular, Mr. Perrusquia sought "a declaratory judgment that the records sought are public records under Tennessee Law for which no exemption applies, that the DA had a legal obligation to retain the Sally Port Footage, and that the DA's and Sheriff's failure to grant access to Mr. Perrusquia to these public records constitutes a violation of the TPRA[.]" He sought injunctive relief requiring:

> a) the Sheriff's Office to provide the DA's Office with a copy of the Sally Port Footage as well as its entire case file on the [officer's] matter that it had previously provided to the DA's Office,
> b) the DA's Office to receive and retain the [officer's] investigative materials, including the Sally Port Footage, from the Sheriff's Office consistent with the applicable public records retention policy and RDA, and
> c) the DA's Office to retain copies of all records that it receives as part of its decision-making process regarding whether to criminally prosecute persons alleged to have committed a crime.

Mr. Perrusquia sought an award of attorney fees pursuant to Tennessee Code Annotated section 10-7-505(g).

The Sheriff's Office and the District Attorney General's Office filed separate responses to the petition. The Sheriff's Office maintained that production of the surveillance video was not required under the Tennessee Public Records Act due to the exemption in Tennessee Code Annotated section 10-7-504(m)(1)(E) for "records that are directly related to the security of any government building," which includes "[s]urveillance recordings." It noted that Mr. Perrusquia had requested surveillance footage of an incident that occurred "inside the Shelby County Jail, colloquially called '201 Poplar,'" which would depict "the interior of the Jail building." The Sheriff's Office acknowledged the portion of the statute stating that "segments of the recordings **may** be made public when they include an act or incident involving public safety or security or possible criminal activity," *id.*, but insisted that this language was discretionary, not mandatory. It contended that the video involved a single altercation between two individuals and was not relevant to any criminal prosecution or civil action. Moreover, the Sheriff's Office explained that it had several "reasons for not releasing the videos" that were directly related to security. The Sheriff's Office submitted a declaration from the Assistant Chief Jailer for the Shelby County Jail, George Askew. Mr. Askew explained that "[t]here are significant security concerns in releasing surveillance video from inside Jail property." First, he noted that release of the video could alert the public as to the location of surveillance cameras inside the jail. He explained that the Sally Port area is where detainees are brought when they are arrested, and it is connected to a lobby where detainees are taken after clearing the Sally Port. Mr. Askew stated that there had been issues with detainees dropping or hiding weapons and drugs in that area, so making video of the area public could give individuals an opportunity to find potential hiding places. Mr. Askew explained that any public release of video showing the layout of the facility posed a potential security risk, as it could also give individuals advance knowledge of paths and procedures that are followed, allowing them to find "blind spots" in security or hiding locations for contraband. He noted that the surveillance, particularly in this area of the jail, could show multiple detainees who could be identified from the video. Mr. Askew explained that audio and video of the detainees can include various stages of processing and can include personal information about them. He noted that such information could include their identities, personal information, and medical information, as "detainees are clearly visible while they are asked medical questions by a nurse," and their responses can be audible.

In light of Mr. Askew's declaration, the Sheriff's Office claimed that public release of the surveillance video would raise "significant security concerns" in addition to detainee privacy issues. The Sheriff's Office stated that it would provide the video to the court for *in camera* review, and that the footage would depict more than one detainee along with audio of a detainee providing medical information. Given the position of the Sheriff's Office that subsection (m)(1)(E) provided it with discretion as to whether the footage should be released, the Sheriff's Office contended that it had weighed the serious issues at

stake and correctly decided not to disclose the video to the public.

In its separate response to the petition, the District Attorney General's Office first argued that nothing in the Tennessee Public Records Act imposed on it any obligation to "retain a copy" of the Sheriff's case file. The District Attorney General's Office contended that it had simply returned the file to the governmental entity that was responsible for it. Thus, the District Attorney General's Office asserted that it did not have custody or possession of the file and that it had no duty under the Tennessee Public Records Act to "recreate" or "obtain" a copy of the file for Mr. Perrusquia. *See* Tenn. Code Ann. § 10-7-503(a)(4)[3] ("This section shall not be construed as requiring a governmental entity . . . to create or recreate a record that does not exist."). In addition, the District Attorney General asserted that even if it had maintained custody of the surveillance footage when Mr. Perrusquia's request was made, it likewise would have chosen not to disclose the video due to the exemption in Tennessee Code Annotated section 10-7-504(m)(1)(E). Like the Sheriff, the District Attorney General interpreted the limited exception allowing disclosure of segments of surveillance video as discretionary.

In support of its response, the District Attorney General's Office submitted the affidavit of the Assistant District Attorney General who served as the Office's Public Records Counsel and Request Coordinator, Timothy Beacham. Mr. Beacham explained that the District Attorney General's Office "routinely discusses and reviews cases with local law enforcement agencies" during the course of criminal investigations, typically pre-arrest and pre-indictment. He said that the District Attorney General's Office "may access and review records of the law enforcement agency," but the "investigative records reviewed are not typically retained but are returned to the law enforcement agency." Mr. Beacham explained that the Office's records retention policy does not apply to "this temporary review of another agency's records," nor is retention necessary in considering pre-arrest or pre-indictment charging determinations as part of the Office's prosecutorial function. Simply put, Mr. Beacham stated, the District Attorney General's Office is not the custodian of such records. On the other hand, Mr. Beacham explained that when a determination is made that further prosecution *is* warranted, then investigative records in final form are presented by the law enforcement agency to the District Attorney General's Office, and "[a] criminal case file is then created and maintained" by the District Attorney General's Office. Finally, Mr. Beacham stated that the District Attorney General's Office has in the past received public records requests for surveillance recordings maintained within its own criminal case files, but those records are classified as confidential by law, and such requests are routinely denied. Thus, Mr. Beacham confirmed that if the District Attorney General's Office had maintained this video in a criminal case file and it included surveillance within the meaning of Tennessee Code Annotated section 10-7-504(m)(1)(E), the request for the video would have been denied.

---

[3] We reference the version of the statute in effect when the petition was filed in June, 2022.

- 5 -

Mr. Perrusquia filed a consolidated reply to the responses filed by both respondents. He insisted that disclosure of the surveillance video was mandatory pursuant to Tennessee Code Annotated section 10-7-504(m)(1)(E) because it depicted possible criminal activity. Mr. Perrusquia argued that interpreting "may" as discretionary would undermine the purpose of the Tennessee Public Records Act. He further argued that both governmental entities were "records custodians" of the video footage with an obligation to "retain" it.

After a hearing, the chancery court entered an order denying Mr. Perrusquia's petition. Initially, the court found that the incident at issue was captured by surveillance video inside the jail in an area controlled and operated by the Sheriff's Office. The court also found that the Sheriff's Office preserved the surveillance video, made it part of its investigative file, and delivered that file to the District Attorney General for review on June 12, 2018. The chancery court found that the District Attorney General's Office reviewed the Sheriff's file but did not open its own file on the matter, nor did the District Attorney General "make or retain copies" of the Sheriff's file. Rather, the court found that the District Attorney General's Office returned the file to the Sheriff's Office on July 17, 2018. The court found that Mr. Perrusquia submitted public records requests, in October 2020, to the Sheriff's Office for its file and to the District Attorney General "for a copy of the surveillance video that was part of the [Sheriff's] investigative file." The court found that the Sheriff's Office provided redacted copies of its investigative file but did not provide the surveillance video on the ground that it was not subject to disclosure pursuant to Tennessee Code Annotated section 10-7-504(m)(1)(E). It noted that the District Attorney General's Office advised Mr. Perrusquia that it no longer had the surveillance video in question because it had been returned to the Sheriff's Office, along with the investigative file, in 2018. The trial court noted that Mr. Perrusquia was requesting injunctions requiring the Sheriff's Office "to provide the DA with a copy of the video and the entire related investigative file," ordering the District Attorney General's Office to "retain" that video and file, requiring both respondents to provide a copy of the video to Mr. Perrusquia, and ordering the District Attorney General's Office to "retain copies" of all records it receives as part of its decision-making process regarding whether to criminally prosecute persons alleged to have committed crimes.

Quoting Tennessee Code Annotated section 10-7-504(m)(1), the chancery court explained that information and records directly related to security of any government building "shall" be maintained as confidential and "shall not" be open to public inspection. The court noted that subsection (m)(1)(E) specifically listed video surveillance recordings as one type of record included within the exception that "shall" be maintained as confidential. It noted that the same subsection provides that segments of such recordings "may" be made public when they include an act or incident involving public safety, security, or possible criminal activity. The court noted that the Sheriff's Office decided not to release portions of the surveillance video in question, and the District Attorney General's Office indicated that if it had possession of the video, it would not release it based on the same rationale. The court found that the surveillance video in question was

"a record directly related to the security of a government building." Thus, it concluded that the video was not subject to disclosure. It concluded that the term "may" in subsection (m)(1)(E) allows an exception to nondisclosure of confidential surveillance recordings but is discretionary, such that the release of portions of otherwise confidential surveillance video is within the discretion of the custodian of the video. In addition, the chancery court concluded that the Sheriff's Office, not the District Attorney General's Office, was the "records custodian" within the meaning of the Act. The court declined "to obligate the DA to become a records custodian of another governmental entity's record by merely reviewing the record to determine whether or not to pursue criminal prosecution." As such, the petition was denied. Mr. Perrusquia timely filed a notice of appeal.

## II. ISSUES PRESENTED

Mr. Perrusquia presents the following issues for review on appeal, which we quote from his brief:

1. Is the Shelby County District Attorney General's Office (the "DA" or the "DA's Office") a "records custodian" pursuant to Tenn. Code Ann. § 10-7-503(a)(1)(C) as to records it receives and reviews to make a charging determination?

2. If the DA was a "records custodian" pursuant to Tenn. Code Ann. § 10-7-503(a)(1)(C) of the requested public records at issue, should the trial court have issued an injunction requiring the Sheriff (the "Sheriff" or the "Sheriff's Office") to reproduce copies of those public records to the DA's Office and the DA to receive and retain those records?

3. Should the trial court have issued an injunction requiring the DA to retain future records it receives and reviews to make a charging decision, except as permitted by the applicable Records Disposition Authorization?

4. Are the Sheriff and the DA required by the Tennessee Public Records Act ("TPRA"), including Tenn. Code Ann. § 10-7-504(m)(1)(E), to produce a video recording depicting an act or incident involving public safety or security or possible criminal activity in the Shelby County Jail's Sally Port?

5. Did the Sheriff and the DA knowingly and willfully withhold the public records sought here in violation of the TPRA such that Petitioner-Appellant should be awarded reasonable attorneys' fees and costs pursuant to Tenn. Code Ann. § 10-7-505(g) for both the proceedings before this Court and the trial court?

For the following reasons, we affirm the decision of the chancery court and remand for

- 7 -

further proceedings.[4]

### III. DISCUSSION

We begin with a brief overview of the Tennessee Public Records Act, Tenn. Code Ann. § 10-7-503, *et seq.* The TPRA is intended "to facilitate the public's access to government records." *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 864 (Tenn. 2016) (citing *Swift v. Campbell*, 159 S.W.3d 565, 571 (Tenn. Ct. App. 2004)). The Act provides, in pertinent part:

(a)(2)(A) All state, county and municipal records shall, at all times during business hours, . . . be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.

(B) The custodian of a public record or the custodian's designee shall promptly make available for inspection any public record not specifically exempt from disclosure. In the event it is not practicable for the record to be promptly available for inspection, the custodian shall, within seven (7) business days:

(i) Make the information available to the requestor;

(ii) Deny the request in writing or by completing a records request response form developed by the office of open records counsel. The response shall include the basis for the denial; or

(iii) Furnish the requester in writing, or by completing a records request response form developed by the office of open records counsel, the time reasonably necessary to produce the record or information.

(3) Failure to respond to the request as described in subdivision (a)(2) shall constitute a denial and the person making the request shall have the right to bring an action as provided in § 10-7-505.

(4) This section shall not be construed as requiring a governmental entity to sort through files to compile information or to create or recreate a record that does not exist. Any request for inspection or copying of a public record shall

---

[4] Mr. Perrusquia argues in his reply brief that the appellees waived certain arguments on appeal by failing to designate them as issues for review. Tennessee Rule of Appellate Procedure 27(b) provides, "*If appellee is also requesting relief from the judgment*, the brief of the appellee shall contain the issues and arguments involved in his request for relief as well as the answer to the brief of appellant." (emphasis added). Accordingly, if an appellee's argument seeks affirmative relief from the trial court's ruling, its failure to designate the argument as an issue in its brief will be fatal to this Court's review. *Mid-S. Maint. Inc. v. Paychex Inc.*, No. W2014-02329-COA-R3-CV, 2015 WL 4880855, at *9 (Tenn. Ct. App. Aug. 14, 2015). The arguments made by the appellees do not seek such affirmative relief and were not required to be designated as issues on appeal. *See Wilson v. City of Memphis*, No. W2014-01822-COA-R3-CV, 2015 WL 4198769, at *11 n.9 (Tenn. Ct. App. July 13, 2015) ("Because [the appellee] prevailed in the trial court . . . and only seeks to uphold the trial court's judgment, she does not appear to be seeking any affirmative relief from this Court. Accordingly, her failure to brief this issue does not result in a waiver.").

be sufficiently detailed to enable the governmental entity to identify the specific records for inspection and copying.

Tenn. Code Ann. § 10-7-503(a)(2)-(4).[5]  The Act broadly defines public records as:

all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental entity[.]

Tenn. Code Ann. § 10-7-503(a)(1)(A)(i).

"There is a presumption of openness for government records."  *Tennessean*, 485 S.W.3d at 864 (citing *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 684 (Tenn. 1994)).  "The Public Records Act, however, is not absolute, as there are numerous statutory exceptions to disclosure."  *Id.* at 865.  The Act itself "recognizes the necessity of withholding some information from the public domain."  *Adams v. Tennessean*, No. M2001-00662-COA-R3-CV, 2002 WL 192575, at *3 (Tenn. Ct. App. Feb. 7, 2002). Tennessee Code Annotated section 10-7-504, and numerous other statutes cross-referenced thereunder, "create classes of confidential records not subject to inspection."  *Griffin v. City of Knoxville*, 821 S.W.2d 921, 923 (Tenn. 1991).  Thus, the General Assembly "included specific exceptions from disclosure in the public records statutes themselves" and also "acknowledged and validated both explicit and implicit exceptions from disclosure found elsewhere in state law."  *Swift*, 159 S.W.3d at 571.

A citizen who requests "the right of personal inspection" and "whose request has been in whole or in part denied . . . shall be entitled to petition for access to any such record and to obtain judicial review of the actions taken to deny the access."  Tenn. Code Ann. § 10-7-505(a).  The Act "provides for an expedited hearing and a truncated procedure with regard to disputes concerning the disclosure of public records."  *Brewer v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2023-00788-COA-R3-CV, 2023 WL 8281582, at *6 (Tenn. Ct. App. Nov. 30, 2023).  "The burden of proof for justifying nondisclosure or demonstrating that a record is statutorily exempt from disclosure rests with the agency that has denied access."  *Tennessean v. Elec. Power Bd. of Nashville*, 979 S.W.2d 297, 301 (Tenn. 1998) (citing Tenn. Code Ann. § 10-7-505(c)).  The Act provides that "the justification for the nondisclosure must be shown by a preponderance of the evidence." Tenn. Code Ann. § 10-7-505(c).  In reviewing the petition, "courts must construe the Act

---

[5] The term "public records law" has been used "to denote the entire body of legislation pertaining to public records" spanning from section 10-7-101 through Part 5. *Memphis Pub. Co. v. City of Memphis*, 871 S.W.2d at 684 n.1.  "The 'Public Records Act,' by contrast, refers only to the sections of Title 10, Chapter 7 that deal with public access to governmental records," codified at § 10-7-503, *et seq*.  *Id.*

'so as to give the fullest possible public access to public records.'" *Tennessean*, 979 S.W.2d at 301 (quoting Tenn. Code Ann. § 10-7-505(d)). The court is "empowered to exercise full injunctive remedies and relief to secure the purposes and intentions of this section[.]" Tenn. Code Ann. § 10-7-505(d).

### A. Statutory Exemption – Tenn. Code Ann. § 10-7-504(m)(1)(E)

In summary, "a public official can justify refusing a Tennessee citizen access to a governmental record only by proving by a preponderance of the evidence that the record in controversy" comes within an exemption. *Memphis Pub. Co. v. Holt*, 710 S.W.2d 513, 517-18 (Tenn. 1986). Thus, we begin with Mr. Perrusquia's issue regarding the applicability of the statutory exemption that was invoked by both the Sheriff and the District Attorney General in their responses to his petition.[6] He frames his issue on appeal as follows: "Are the Sheriff and the DA required by the Tennessee Public Records Act ("TPRA"), including Tenn. Code Ann. § 10-7-504(m)(1)(E), to produce a video recording depicting an act or incident involving public safety or security or possible criminal activity in the Shelby County Jail's Sally Port?"

Read in context, Tennessee Code Annotated section 10-7-504(m) provides:

(m)(1) *Information and records that are directly related to the security of any government building shall be maintained as confidential and shall not be open to public inspection.* For purposes of this subsection (m), "government building" means any building that is owned, leased or controlled, in whole or in part, by the state of Tennessee or any county, municipality, city or other political subdivision of the state of Tennessee. *Such information and records include*, but are not limited to:
(A) Information and records about alarm and security systems used at the government building, including codes, passwords, wiring diagrams, plans and security procedures and protocols related to the security systems;
(B) Security plans, including security-related contingency planning and emergency response plans;
(C) Assessments of security vulnerability;
(D) Information and records that would identify those areas of structural or operational vulnerability that would permit unlawful disruption to, or interference with, the services provided by a governmental entity; and
(E) *Surveillance recordings*, whether recorded to audio or visual format, or both, *except segments of the recordings may be made public when they*

---

[6] Tennessee Code Annotated section 10-7-504(a)(5) contains a separate exemption relating to "materials in the possession of the office of the attorney general and reporter which relate to any pending or contemplated legal or administrative proceeding in which the office of the attorney general and reporter may be involved," `but the parties do not rely on it in this litigation.

- 10 -

*include an act or incident involving public safety or security or possible criminal activity*. In addition, if the recordings are relevant to a civil action or criminal prosecution, then the recordings may be released in compliance with a subpoena or an order of a court of record in accordance with the Tennessee rules of civil or criminal procedure. The court or administrative judge having jurisdiction over the proceedings shall issue appropriate protective orders, when necessary, to ensure that the information is disclosed only to appropriate persons. Release of any segment or segments of the recordings shall not be construed as waiving the confidentiality of the remaining segments of the audio or visual tape.

(2) Information made confidential by this subsection (m) shall be redacted wherever possible and nothing in this subsection (m) shall be used to limit or deny access to otherwise public information because a file or document contains confidential information.

(emphasis added). Mr. Perrusquia contends that the term "may" in the phrase "segments of the recordings may be made public" should be construed as a mandatory requirement. Thus, according to Mr. Perrusquia, the surveillance video in this case must be made public because, he argues, it involves possible criminal activity.

"In general, use of the word 'shall' in a statute indicates that the statutory provision is mandatory, not discretionary." *Emory v. Memphis City Sch. Bd. of Educ.*, 514 S.W.3d 129, 144 n.11 (Tenn. 2017). Use of the word "may" "ordinarily connotes discretion or permission; and it will not be treated as a word of command unless there is something in the context or subject matter of the act or statute under consideration to indicate that it was used in that sense." *In re Estate of Rogers*, 562 S.W.3d 409, 424 (Tenn. Ct. App. 2018) (quoting *Colella v. Whitt*, 202 Tenn. 551, 308 S.W.2d 369, 371 (1957)); *see, e.g*, *State v. Cavin*, 671 S.W.3d 520, 526 (Tenn. 2023) ("The General Assembly's use of the term 'may' in this context rather than 'shall' is significant. 'May' is a permissive term and gives a trial court discretion[.]"). "In determining whether 'may' should be interpreted as being mandatory, 'the prime object is to ascertain the legislative intent, from a consideration of the entire statute, its nature, its object, and the consequences that would result from construing it one way or the other.'" *Robinson v. Fulliton*, 140 S.W.3d 312, 321 (Tenn. Ct. App. 2003) (quoting *Baker v. Seal*, 694 S.W.2d 948, 951 (Tenn. Ct. App. 1984)). "'When the words of a statute are ambiguous or when it is just not clear what the legislature had in mind, courts may look beyond a statute's text for reliable guides to the statute's meaning.'" *Id.* (quoting *BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997)). Such guides may include "the statute's historical background, the conditions giving rise to the statute, circumstances contemporaneous with the statute's enactment, and the statute's legislative history," and the statute's stated purpose must also be considered. *Id.*

Mr. Perrusquia points to Tennessee Code Annotated section 10-7-503(a)(2)(B),

which provides, "The custodian of a public record . . . shall promptly make available for inspection any public record *not specifically exempt from disclosure*." (emphasis added). In addition, Tennessee Code Annotated section 10-7-505(d) of the Act states that it "shall be broadly construed so as to give the fullest possible public access to public records." Thus, we recognize that courts must "interpret the terms of the Act liberally to enforce the public interest in open access to the records of state, county, and municipal governmental entities." *Memphis Publ'g Co. v. Cherokee Child. & Fam. Servs., Inc.*, 87 S.W.3d 67, 74 (Tenn. 2002). At the same time, we must also bear in mind that it was "within the power of the Legislature to create, limit, or abolish rights of access to public records." *Moncier v. Harris*, No. E2016-00209-COA-R3-CV, 2018 WL 1640072, at *5 (Tenn. Ct. App. Apr. 5, 2018) (citing *Abernathy v. Whitley*, 838 S.W.2d 211, 214 (Tenn. Ct. App. 1992)). Despite "the breadth of the public records statutes' disclosure requirements, the General Assembly recognized from the outset that circumstances could arise where the reasons not to disclose a particular record or class of records would outweigh the policy favoring public disclosure." *Swift*, 159 S.W.3d at 571. Accordingly, "[n]otwithstanding the presumption of openness, in the interest of public policy the General Assembly [] provided specific explicit exemptions from disclosure contained in the TPRA itself." *Patterson v. Convention Ctr. Auth.*, 421 S.W.3d 597, 606 (Tenn. Ct. App. 2013).

Over the years, the General Assembly has added many categories of records that are specifically excepted from the Act, such that "[t]he once all-encompassing Public Records Act is now more narrow." *Tennessean*, 485 S.W.3d at 865.[7] "The exceptions to [the] TPRA recognized by state law reflect the Legislature's judgment that 'the reasons not to disclose a record outweigh the policy favoring disclosure.'" *Moncier*, 2018 WL 1640072, at *5 (quoting *Allen v. Day*, 213 S.W.3d 244, 261 (Tenn. Ct. App. 2006)). This Court has recognized that "[i]t was the legislature that opened the door making the records public in the first place. Certainly, in light of subsequent events, the legislature could decide that its policy was too broad and close the door on certain records." *Thompson v. Reynolds*, 858 S.W.2d 328, 329 (Tenn. Ct. App. 1993). For instance, in *Moncier v. Harris*, we observed that Tennessee Code Annotated section 10-7-504(a)(29) was "a completely new addition that brought entirely new categories of personal information under a confidential umbrella, supporting the legislature's intent to *limit* the Public Disclosure Act." *Moncier v. Harris*, No. E2016-00209-COA-R3-CV, 2017 WL 946350, at *7 (Tenn. Ct. App. Mar. 10, 2017) (emphasis added). Notably, the TPRA's exceptions "are not subsumed by the admonition to interpret the Act broadly," and "courts are not free to apply a 'broad' interpretation that disregards specific statutory language." *Tennessean v. Tennessee Dep't of Pers.*, No. M2005-02578-COA-R3-CV, 2007 WL 1241337, at *5 (Tenn. Ct. App. Apr. 27, 2007).

---

[7] Twenty years ago, we noted that "[t]he cross references to Tenn. Code Ann. § 10-7-504 currently list approximately 136 statutes containing exceptions to public records act disclosure." *Swift*, 159 S.W.3d at 572 n.11. "[B]y 2018, the Office of Open Records Counsel catalogued 538 express PRA exceptions, some found in section 10-7-504, but many more scattered through other statutes." Andrew C. Fels, *Missing Footage: Reforming Tennessee's Law Enforcement Public Record Exception*, 53 U. Mem. L. Rev. 375, 390 (2022).

Having concluded that the stated purpose of the TPRA does not fully resolve the issue of whether "may" in section 10-7-504(m)(1)(E) should be interpreted as permissive or mandatory, we will look to legislative history "in an effort to glean the legislature's intent." *See Robinson*, 140 S.W.3d at 322; *see also Memphis Publ'g Co. v. City of Memphis*, No. W2016-01680-COA-R3-CV, 2017 WL 3175652, at *8 (Tenn. Ct. App. July 26, 2017) ("Upon our consideration of section 10-7-503(f), the legislative history, and in the context of other provisions of the TPRA, we do not construe the term 'chief public administrative officer' to include the position of chief of police or police director.").

The legislative history directly addresses the issue before us regarding the intended meaning of "may" within subsection (m)(1)(E). This subsection was added in 2009. *See* 2009 Tenn. Laws Pub. Ch. 567 (H.B. 703). During the Senate Session on May 11, 2009, the following exchange took place when a senator questioned the sponsor of the bill about how the exception for surveillance video, which had been amended in the bill, would apply in certain circumstances:

> Senator Roy Herron: . . . Under this amendment if there is an act or incident involving public safety or security, then the video or the recordings could be shared. What if it's an incident where someone, for example, says that government employees are not showing up for work, and in effect are being paid as phantom workers? Could you use the surveillance in those situations? What if there is a situation where someone is alleging that government workers are walking off with equipment or property that belongs to the government? Is that the sort of security issue that would be covered by your amendment or would that be outside the scope of that?
>
> . . . .
>
> Senator Dewayne Bunch: Thank you, Mr. Speaker. I believe that those would be covered by the amendment, but greater latitude it should be noted is given to the discretion of the party or folks that will be deciding. And obviously if someone doesn't like the decision that is made by the county, or the county attorney, then they can take that issue up with the court like they do now. So I do think it – the bill as drafted and the amendment as drafted it gives examples – including but not limited to examples – and those are the examples cited on the bill. With the purpose being information and records that are directly related to the security of any government building shall be confidential, and the purpose being, when requests are made that the county attorney deems to be inappropriate as far as security of the government building, or whichever government building it may be . . . . In this specific instance that brought this case before us, it was a county courthouse where someone was requesting records, the tapes of the court proceedings, which showed the movement of the guards, and in our courthouse we don't have guards for every courtroom, and so it showed the time and when they were

- 13 -

moving and they felt that was something that should not be made public. And so because it is something that deals with security.

So I think we give great discretion to the county to make that determination. And if the folks who are requesting that information obviously don't like it, then they are… then the discretion would go to the court. With the legislative intent being, again the goal of section one, information and records that are directly related to security of any govt building. And I think within that discretion I do believe that our trial courts and our county folks can handle that and be able to deal wisely with that. But I think – I appreciate your questions. I think they are good "what if" questions. And I do think it would fall from the discretion of the attorney but, or county attorney or county officials, but I do think those would be instances where if someone made a prima facie case that this was going on, that perhaps this information would be readily available so I hope that answers your inquiry.

So, according to the explanation given by the bill sponsor, the legislative intent was not to create a situation in which a governmental entity would have a mandatory duty to release any surveillance video arguably related to public safety or security. To use his words, the governmental entity would have "latitude" and "discretion," and there would likely be situations "when requests are made that the county attorney deems to be inappropriate as far as security of the government building."

This interpretation is entirely consistent with the legislature's use of the term "may" within this part of the statute while using the term "shall" in other portions of the same subsection. *See* Tenn. Code Ann. § 10-7-504(m)(1)(E) ("Information and records that are directly related to the security of any government building *shall* be maintained as confidential and *shall* not be open to public inspection. . . . [S]egments of the recordings *may* be made public when they include an act or incident involving public safety or security or possible criminal activity.") (emphasis added). *Cf. Memphis Publ'g Co. v. City of Memphis*, 2017 WL 3175652, at *9 ("Upon our consideration of the statutory scheme and legislative history, we are not persuaded that the position of director of police was intended to be included within the ambit of section 503(f); if the Legislature had so intended, it could have used the specific language designating the position 'chief law enforcement officer' as it did in section 504.").

Mr. Perrusquia suggests that it will defeat the stated purpose of the TPRA if government officials have discretion regarding whether to release a surveillance video showing possible criminal activity. He contends that the release of such surveillance "would be in the public interest." At the same time, we recognize the existence of competing concerns regarding any mandatory release of video surveillance related to the security of government buildings. As explained above, the exceptions to the TPRA "reflect the Legislature's judgment that 'the reasons not to disclose a record outweigh the policy

- 14 -

favoring disclosure.'" *Moncier*, 2018 WL 1640072, at \*5 (quoting *Allen*, 213 S.W.3d at 261). "Where the legislature has clearly established a statute's parameters, courts are not free to apply a 'broad' interpretation that disregards specific statutory language."[8] *Tennessee Dep't of Pers.*, 2007 WL 1241337, at \*5. In this particular context, Tennessee courts have repeatedly recognized that "the General Assembly, not this Court, establishes the public policy of Tennessee." *Schneider v. City of Jackson*, 226 S.W.3d 332, 344 (Tenn. 2007) (explaining that "[w]hether the law enforcement privilege should be adopted as an exception to the Public Records Act is a question for the General Assembly"); *see also Public.Resource.Org v. Matthew Bender & Co., Inc.*, No. M2022-01260-COA-R3-CV, 2023 WL 7408939, at \*8 (Tenn. Ct. App. Nov. 9, 2023) ("[W]e are guided by the General Assembly's clear intent, not the underlying wisdom of the policy, which we do not pass judgment on."); *Patterson*, 421 S.W.3d at 613 ("it is the prerogative of the General Assembly to enunciate exceptions to disclosure based on public policy"); *Moncier*, 2018 WL 1640072, at \*5 ("It is within the power of the Legislature to create, limit, or abolish rights of access to public records.").

Considering the statutory text, the purpose and history of the Tennessee Public Records Act and its exceptions, and the legislative history regarding this particular subsection, we conclude that the trial court properly interpreted the disputed language within Tennessee Code Annotated section 10-7-504(m)(1)(E) as permissive rather than mandatory. We reject Mr. Perrusquia's argument that the statute "required" the respondents to make the surveillance video available for public inspection.

### B. Injunctive Relief against the District Attorney General

Even though we have determined that the respondents were not mandatorily required to produce the surveillance video at issue in this case, Mr. Perrusquia raises several other issues that only pertain to the District Attorney General's Office and the files it will maintain going forward. The issues he presented pertaining to the District Attorney General are stated in his brief as follows:

> 1. Is the Shelby County District Attorney General's Office (the "DA" or the "DA's Office") a "records custodian" pursuant to Tenn. Code Ann. § 10-7-503(a)(1)(C) as to records it receives and reviews to make a charging determination?

---

[8] We have recognized other instances in which disclosure was not mandatory. *See, e.g.*, *Coleman v. Kisber*, 338 S.W.3d 895, 908 (Tenn. Ct. App. 2010) (explaining that "[t]he decision to disclose tax administration information lies solely within the discretion of the Commissioner of the Department of Revenue," Tenn. Code Ann. § 67-1-1711, and the Commissioner had determined that it was not in the best interests of the State to release the withheld documents); *Contemp. Media, Inc. v. Gilless*, No. W2000-02774-COA-R3-CV, 2002 WL 1284272, at \*3 (Tenn. Ct. App. June 3, 2002) ("[T]he exemption to the Public Records Act contained in Tennessee Code Annotated § 10-7-504(g)(1)(A) permits the sheriff's department to redact or keep confidential the photographs of the nineteen newly hired deputy sheriffs.").

2.　　If the DA was a "records custodian" pursuant to Tenn. Code Ann. § 10-7-503(a)(1)(C) of the requested public records at issue, should the trial court have issued an injunction requiring the Sheriff (the "Sheriff" or the "Sheriff's Office") to *reproduce copies* of those public records to the DA's Office and the DA to receive and retain those records?

3.　　Should the trial court have issued an injunction requiring the DA to retain *future records* it receives and reviews to make a charging decision, except as permitted by the applicable Records Disposition Authorization?

(emphasis added).　Mr. Perrusquia notes that he asserted two claims in his petition, which he characterized as "Failure to Provide Access to Public Records" and "Failure to Retain Public Records."　He also sought several injunctions, requiring:

a) the Sheriff's Office to provide the DA's Office with *a copy* of the Sally Port Footage as well as its entire case file on the [officer's] matter that it had previously provided to the DA's Office,

b) the DA's Office to receive and retain the [officer's] investigative materials, including the Sally Port Footage, from the Sheriff's Office consistent with the applicable public records retention policy and RDA, and

c) the DA's Office to *retain copies* of all records that it receives as part of its decision-making process regarding whether to criminally prosecute persons alleged to have committed a crime.

(emphasis added).　As these issues and requests make clear, Mr. Perrusquia is not seeking to inspect an existing record in the hands of the District Attorney General's Office.　Mr. Perrusquia conceded in his petition that he had already "received the Sheriff's Case File *from the Sheriff* in response to a public records request." (emphasis added).　Still, he wants the Sheriff's Office or the District Attorney General's Office to "reproduce copies" of the investigative files of the Sheriff's Office, which will then be "retained" by the District Attorney General's Office going forward.　He seeks an injunction requiring the District Attorney General's Office to make and retain "copies" of *all records it receives* as part of its decision-making process in the future.　He insists that such injunctive relief is proper under the Tennessee Public Records Act and "necessary to remedy the DA's failure to retain public records."

"[T]he Tennessee legislature has bestowed upon Tennessee courts limited subject matter jurisdiction to adjudicate claims arising under the Public Records Act, where the petitioner seeks access to records in the possession of a government agency." *Allen*, 213 S.W.3d at 248.　"In light of the limited nature of a trial court's subject matter jurisdiction under [the] TPRA, the Legislature has provided specific procedures for obtaining access to governmental records when access has been denied." *Moncier*, 2018 WL 1640072, at \*11 (citing Tenn. Code Ann. § 10-7-505).　Specifically, Tennessee Code Annotated section 10-7-505 provides:

(a) Any citizen of Tennessee who shall request the right of personal inspection of any state, county or municipal record as provided in § 10-7-503, and whose request has been in whole or in part denied by the official and/or designee of the official or through any act or regulation of any official or designee of any official, shall be entitled to petition for access to any such record and to obtain judicial review of the actions taken to deny the access.

. . . .

(d) The court, in ruling upon the petition of any party proceeding hereunder, shall render written findings of fact and conclusions of law and *shall be empowered to exercise full injunctive remedies and relief to secure the purposes and intentions of this section*, and this section shall be broadly construed so as to give the fullest possible public access to public records.

(emphasis added). "This statute plainly and in unambiguous language confers upon courts broad powers to grant injunctive remedies that secure the purposes and intentions of the Public Records Act." *Schneider*, 226 S.W.3d at 348. Thus, "[i]n ruling on a petition for access to records, the Chancery Court is empowered to exercise full injunctive remedies and relief under the Act." *Cole v. Campbell*, 968 S.W.2d 274, 275 (Tenn. 1998). In *Schneider*, for example, the Tennessee Supreme Court reinstated a trial court's permanent injunction "requiring the City prospectively to respond in writing to all future written public records requests from *The Jackson Sun* or its agents and to explain whether the record sought would be produced and, if not, the basis for nondisclosure." 226 S.W.3d at 348. The Supreme Court explained that this type of permanent injunction "directly remedie[d] the City's failure to respond to Petitioners' multiple requests for public records." *Id.* In that case, the injunction requiring the City to provide a written response articulating its reasons for nondisclosure secured "the purposes of the Public Records Act[.]" *Id.*

Essentially, Tennessee Code Annotated section 10-7-505 provides "an enforcement mechanism to gain access to governmental records opened to the public by T.C.A. § 10-7-503." *Memphis Pub. Co. v. Holt*, 710 S.W.2d at 517. However, we must keep in mind that this section empowers a court to award injunctive relief "*to secure the purposes and intentions of this section*." Tenn. Code Ann. § 10-7-505(d) (emphasis added). Mr. Perrusquia contends that the future injunctive relief he seeks "secures the purposes and intentions of the TPRA." We disagree.

"Although the TPRA allows the public a right to *examine* governmental records, section 10-7-503(a)(4) makes clear that it does not require 'a governmental entity to sort through files to compile information or to *create or recreate a record that does not exist*.'" *Conley v. Knox Cnty. Sheriff*, No. E2020-01713-COA-R3-CV, 2022 WL 289275, at *4 (Tenn. Ct. App. Feb. 1, 2022) *perm. app. denied* (Tenn. Aug. 3, 2022) (quoting Tenn. Code Ann. § 10-7-503(a)(4)) (emphasis added).

This principle is illustrated in a number of cases, including *Hickman v. Tennessee Board of Probation and Parole*, No. M2001-02346-COA-R3-CV, 2003 WL 724474, at *1-2 (Tenn. Ct. App. Mar. 4, 2003), where an inmate submitted a long list of requests for records related to inmates and parole decisions. The Board claimed that it was not required to comply with the requests because the information he sought would have to be "manually obtained." *Id.* at *9. For example, the petitioner asked for certain information about all inmates certified as parole eligible dating back to 1992. *Id.* at *10. The Board explained that this information was only maintained on a form in each inmate's individual file, not in a computer, so the file of each inmate would have to be reviewed to find the requested information:

> That is, the Board asserts that some of the information requested by Mr. Hickman is simply not available in a record that the Board has made or received; the Board does not maintain the requested information in a record as defined by the statute. In other words, the Board essentially asserts that Mr. Hickman's request is not for an existing record, but instead would require the Board to create a new record by compiling the information from thousands of existing records.

*Id.* at *9-10. Regarding this particular request, for information not stored in a computer system, we concluded that "the Public Records Act does not require a governmental entity to manually sort through records and compile information gained from those records." *Id.* at *10. We found "nothing in the Act which would shift to the agency the burden of manually compiling information from thousands of separate records into a new record."[9] *Id.* The Board was not required "to go through every parole eligible inmate's file and retrieve the Risk Factor for each so as to compile that information for Mr. Hickman."[10] *Id.*

---

[9] In 2008, Tennessee Code Annotated section 10-7-503 was amended to specify that "[t]his section shall not be construed as requiring a governmental entity or public official to *create* a record that does not exist." 2008 Tenn. Laws Pub. Ch. 1179 (S.B. 3280) (emphasis added). In 2016, it was amended again to provide that "[t]his section shall not be construed as requiring a governmental entity . . . to create *or recreate* a record that does not exist." 2016 Tenn. Laws Pub. Ch. 722 (H.B. 2082) (emphasis added). The statute clarifies, however, that "[t]he redaction of confidential information shall not constitute the creation of a new record." Tenn. Code Ann. § 10-7-503(a)(5).

[10] As Mr. Perrusquia notes, the *Hickman* Court held that "[a]lthough the Act [] gives the court the power to 'exercise full injunctive remedies and relief to secure the purposes and intentions of this section,' we find no requirement that a petitioner meet the requirements for an injunction set out in Tenn. R. Civ. P. 65." 2003 WL 724474, at *5. We stated that "a citizen seeking access to government records must only meet the requirements set out in the Public Records Act." *Id.* We explained,

> If a citizen is denied access to a public record, no additional 'irreparable harm' must be shown. The legislature has established as public policy the fullest possible access to public records and has determined that denial of access is sufficient herein to warrant court action requiring disclosure. The Act provides that if the court finds that access was improperly denied, . . . the court shall order that the records be made available.

This Court has considered other requests to inspect records that either did not exist or were not in the possession of the respondents. In *Pait v. City of Gatlinburg*, No. 03A01-9808-CH-00274, 1999 WL 356304, at *1 (Tenn. Ct. App. May 19, 1999), the plaintiff sought "information he contended was possessed by the Defendants in connection with his criminal conviction." The first type of record he sought was "written statements of witnesses" taken by one of the officers involved in the criminal investigation, but the trial court found that written statements "were not in existence because the statements were oral." *Id.* The second type of record he sought was "tapes of a recording made by an individual aiding the police investigation." *Id.* The trial court found that "neither the City of Gatlinburg nor its Chief of Police, [] had possession of the tape and that it was most likely in the office of the Tennessee Bureau of Investigation, the Attorney General or the Clerk of the Criminal Court." *Id.* On appeal, we concluded that the evidence did not preponderate against the trial court's findings of fact, and we concurred in his determination that "the Defendants could not be ordered to produce material that they did not possess." *Id.*; *see also Slate v. Schmutzer*, No. 03A01-9711-CH-00541, 1998 WL 156904, at *1 (Tenn. Ct. App. Mar. 17, 1998) (affirming dismissal of a petition filed against the District Attorney General requesting a record of a proceeding before the Board of Paroles, as the chancellor could take notice that the District Attorney General was not the custodian of the records and did not have access to them).

In *Shabazz v. Campbell*, 63 S.W.3d 776, 779 (Tenn. Ct. App. 2001), an inmate requested various documents including "[c]opies of the unit administrative segregation encounter logs for December 18, 1996 th[r]ough March 22, 1997." The trial court denied this request "on the grounds that no such documents as 'unit administrative segregation and counter logs' exist." *Id.* at 782. This Court affirmed in all respects, concluding that the chancellor's holdings were "clearly correct." *Id.* at 783.[11]

---

*Id.* Regardless of Mr. Perrusquia's argument regarding additional factors, however, injunctive relief is only appropriate if the petitioner meets the requirements of the Tennessee Public Records Act. *See id.*

[11] Similarly, in *Miller v. City of LaFollette*, No. E2023-00197-COA-R3-CV, 2024 WL 263172, at *1 (Tenn. Ct. App. Jan. 24, 2024), this Court considered a request for attorney fees under the Act where the petitioner requested documents that had already been shredded by an attorney hired by the City, and the issue was whether the City willfully denied access to the records. We noted that the requested records "were not in existence at the time that the City received Mr. Miller's records request," so, "[v]ery simply, Mr. Miller was not actually denied the 'investigatory' records because there was nothing to disclose." *Id.* at *4. We added, "assuming arguendo that [the] records would have otherwise been subject to disclosure under the Act had they been in existence, the trial court's findings signal that there was nothing that could be disclosed. Mr. Miller could not obtain the desired records then, nor could he or any other citizen obtain them now pursuant to a public records request." *Id.* at *5.

We recognized, however, that "rendering records unavailable can create consequences for a governmental entity or public official." *Id.* at *5 n.5. We noted that Tennessee Code Annotated section 10-7-503(h)(3) provides, "A governmental entity that authorizes the destruction of public records in violation of this part may be fined up to five hundred dollars ($500) by a court of competent jurisdiction." The statute also clarifies that it "does not absolve a public official from criminal liability for intentionally or knowingly altering or destroying a public record in violation of § 39-16-504." Tenn. Code Ann. § 10-7-503(h)(5).

In *Little v. City of Chattanooga*, No. E2011-02724-COA-R3-CV, 2012 WL 4358174, at *1, *10 (Tenn. Ct. App. Sept. 25, 2012), a petitioner requested certain documents related to services provided since an annexation, but the City claimed that it "could not find sewer contract number 79." Noting that Tennessee Code Annotated section 10-7-503(a) provided that it "shall not be construed as requiring a governmental entity . . . to create a record that does not exist," the trial court explained that the petitioner had at least two alternatives – she could use the information she had about payments made pursuant to Contract 79 "as a basis for a public records request and thus try to find additional information about Contract 79," or she could exercise her right to inspect records by going to the office and going through files to "look for Contract 79[.]" *Id.* at *10. On appeal, this Court agreed with the trial court that the petitioner should go to inspect the records and "look for Contract 79." *Id.* at *16.

Finally, this Court considered a situation factually similar to the one before us, regarding an investigative file no longer in the possession of the defendants, in *Fletcher v. Totten*, No. 23, 1988 WL 82069 (Tenn. Ct. App. Aug. 8, 1988). A prisoner had filed the petition and named as defendants the chief jailer of the Shelby County Jail, the City of Memphis Police Department, and the State of Tennessee. *Id.* at *1. The petitioner alleged that the Police Department had denied him access to "the investigative file surrounding his arrest and indictment," specifically including victim statements, radio transmissions, police reports, and other documents. *Id.* Each defendant alleged that it "did not have custody of the records" the petitioner sought. *Id.* According to the petitioner, his representative was told that "after fourteen (14) months the various records are returned to other departments and are not attainable without a court order." *Id.* Pertinent to this appeal, the Memphis Police Department alleged that the records the petitioner sought were "no longer in its custody" because they had been "turned over to the Shelby County Sheriff's Department or the Office of the Attorney General." *Id.* at *2. The trial court dismissed the petition after considering various affidavits, and this Court reviewed the decision as one for summary judgment. *Id.* at *1. We noted the position of the Memphis Police Department that it did not have access to the records because they had been "turned over" to the Shelby County Sheriff's Department or to the Office of the Attorney General. *Id.* at *2. The petitioner had attempted to rebut this contention by alleging that the Memphis Police Department and Shelby County Sheriff's Department had "merged" and "consolidated records." *Id.* at *3. This claim was not based on the petitioner's personal knowledge, however, and did not satisfy the requirements of Tennessee Rule of Civil Procedure 56.05. *Id.* Therefore, it was "insufficient to raise a genuine issue of material fact as to whether the Memphis Police Department ha[d] access to the records plaintiff seeks." *Id.* We affirmed the dismissal of the petition. *Id.* at *4.

Returning to the issue in the case at bar, Mr. Perrusquia contends that the District Attorney General's Office "violate[s] the TPRA" by failing to make copies of files and retain them. In response, the District Attorney General's Office insists that the right to

inspection under the TPRA "necessarily assumes" that the governmental entity has possession or custody of the record, and nothing in the TPRA requires it to copy and retain the records of the Sheriff's Office. As the aforementioned cases demonstrate, the TPRA does not require governmental entities to create or recreate documents they do not possess. *Pait*, 1999 WL 356304, at *1 ("the Defendants could not be ordered to produce material that they did not possess"). Simply put, Tennessee Code Annotated section 10-7-503 "does not require 'a governmental entity . . . to *create or recreate* a record that does not exist.'" *Conley*, 2022 WL 289275, at *4 (quoting Tenn. Code Ann. § 10-7-503(a)(4)).[12] That is precisely what Mr. Perrusquia seeks to accomplish here. He does not seek to inspect any existing public record. Thus, his request for an injunction requiring the respondents to "reproduce copies" of files (i.e., create files), which will then be "retained" by the District Attorney General's Office, is not an appropriate request under the Tennessee Public Records Act.[13]

As the issues in his brief reflect, Mr. Perrusquia primarily focuses his argument with respect to this issue on the definition of a "records custodian" within Tennessee Code Annotated section 10-7-503(a)(1)(C), and he insists that the District Attorney General's Office and the Sheriff's Office both qualified as a "records custodian" of the investigative file. The following two definitions were added to the statute in 2016:

> (B) "Public records request coordinator" means any individual within a governmental entity whose role it is to ensure that public records requests are routed to the appropriate records custodian and that requests are fulfilled in

---

[12] Several departmental regulations recognize this principle. *See, e.g.*, Tenn. Comp. R. & Regs. 0400-01-01-.01(8) ("The Tennessee Public Records Act (TPRA) grants Tennessee citizens the right to access records made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental entity that exist at the time of the request."); Tenn. Comp. R. & Regs. 1680-04-02-.05(4) ("The Tennessee Public Records Act grants Tennessee citizens the right to access open public records that exist at the time of the request."). *See also* Tenn. Op. Att'y Gen. No. 08-64 (Mar. 24, 2008) ("Tennessee's Public Records Act requires that a records custodian make any public records in his or her custody or control available for inspection during normal business hours, unless a state law provides otherwise with respect to the openness of such records. . . . Thus, to the extent that requested public records are in the custody or control of the Sumner County Airport Authority, it is required to make those records available for inspection during normal business hours[.]").

[13] We express no opinion as to whether the District Attorney General's Office had any duty to create records under other statutes or regulations not relied on in this litigation. This is a petition filed pursuant to the Tennessee Public Records Act, and Mr. Perrusquia's issues on appeal are narrowly framed regarding the respondents' obligations under the Tennessee Public Records Act. *See, e.g.*, *State v. Cawood*, 134 S.W.3d 159, 165 (Tenn. 2004) ("Having established that the tapes are 'public records,' we must determine what statute governs the retention and, more important, the disposal of the records. Section 10-7-503 of the Public Records Act only provides for *inspection* of the records because the records must stay in the custody and control of the clerk."); Tenn. Op. Att'y Gen. No. 16-47 (Dec. 22, 2016) ("The TPRA does not address whether comments posted on a municipal social media account are subject to removal or censorship. The TPRA only provides a statutory right of inspection of public records to Tennessee citizens.").

accordance with § 10-7-503(a)(2)(B); and

(C) "Records custodian" means any office, official, or employee of any governmental entity lawfully responsible for the direct custody and care of a public record.

Tenn. Code Ann. § 10-7-503(a)(1); *see* 2016 Tenn. Laws Pub. Ch. 722 (H.B. 2082). According to Mr. Perrusquia, "the Legislature defined a 'records custodian' expansively to include any governmental entity that takes 'direct custody' of a public record as part of its official business." From our reading of this definition, however, it identifies a records custodian as any "office, official, or employee" *within any governmental entity* who is lawfully responsible for the direct custody and care of a public record. *See id.*; *see also* Tenn. Code Ann. § 10-7-503(a)(7)(A)(iv) ("If a governmental entity requires a request to be in writing . . . *the records custodian of the governmental entity* shall accept any of the following . . . ."); Tenn. Code Ann. § 10-7-503(h)(4) ("A governmental entity is not liable under this subsection (h) for authorizing the destruction of public records if the governmental entity contacted the respective records custodian . . . .").[14] In any event, however, this definition simply does not impose any legal obligation on the respondents to create a document or file that does not otherwise exist. Subsection (a)(4) of the very same statute clearly states, "This section shall not be construed as requiring a governmental entity to sort through files to compile information or to create or recreate a record that does not exist." Tenn. Code Ann. § 10-7-503(a)(4). In denying Mr. Perrusquia's petition and requests for injunctive relief, the trial court stated that it "decline[d] to obligate the DA to become a records custodian of another governmental entity's record[.]" We similarly find no basis in the TPRA, or its definition of a records custodian, for requiring the District Attorney General's Office to create or recreate records in the manner suggested by Mr. Perrusquia.

---

[14] *See also* Tenn. Comp. R. & Regs. 0240-01-04-.02(4) ("Records Custodian - The office, official or employee lawfully responsible for the direct custody and care of a public record. See T.C.A. § 10-7-503(a)(1)(C). The records custodian is not necessarily the original preparer or receiver of the record."); Tenn. Comp. R. & Regs. 0400-01-01-.01(2) ("'Public Records Request Coordinator' and 'PRRC' mean the individual designated by this rule who has the responsibility to ensure public record requests are routed to the appropriate records custodian and are fulfilled in accordance with the TPRA. The Public Records Request Coordinator may also be a records custodian."); Tenn. Comp. R. & Regs. 0690-06-02-.02(5) ("'Records Custodian' means any office, official or employee of the Department of General Services lawfully responsible for the direct custody and care of a public record."); Tenn. Comp. R. & Regs. 0800-08-01-.01(3) ("Questions regarding public record requests should be addressed to the Records Custodian for the Tennessee Department of Labor & Workforce Development."); Tenn. Comp. R. & Regs. 0800-02-29-.02(5) ("'Records Custodian' means the individual or individuals designated by the Bureau lawfully responsible for the direct custody and care of a public record. See Tenn. Code Ann. § 10-7-503(a)(1)(C)."); Tenn. Comp. R. & Regs. 1200-35-01-.02(10) ("'Records Custodian' means an employee of the Department who has direct supervisory authority over the specific division, section or office of the Department where the requested Department records are maintained."); Tenn. Comp. R. & Regs. 1540-01-11-.02(5) ("'Records Custodian' means any office, official, or employee of the Tennessee Higher Education Commission lawfully responsible for the direct custody and care of a public record.").

Mr. Perrusquia compares the facts of this case to those in *Griffin v. City of Knoxville*, 821 S.W.2d 921, 923-24 (Tenn. 1991), where the Supreme Court held that suicide notes taken into custody by officers at the scene for safekeeping and thereafter copied and retained must be made available for public inspection. However, those facts are distinguishable because the notes were records already in existence and in the custody of the governmental entity when the request was made.[15] *See id.* The issue was whether those existing documents should be unsealed and made available for inspection, not whether the officers had a duty under the Tennessee Public Records Act to create records in the first place. Here, Mr. Perrusquia insists that the District Attorney General's Office was required to create a copy of the entire investigative file of the Sheriff's Office under the Tennessee Public Records Act.

Finally, Mr. Perrusquia presents a very limited argument that "both the DA's Records Retention Policy and applicable Records Disposition Authorization support the conclusion that the DA was a records custodian" of the Sheriff's file. He notes that the video and file were provided to the District Attorney General "to decide whether to charge [the] Memphis Police Department Officer [] for his actions captured in the recording." Mr. Perrusquia quotes a portion of the Records Retention Policy stating that criminal case file records for misdemeanors shall be retained for five years. He also cites to a Records Disposition Authorization for "Misdemeanor Case Files." As the District Attorney General's Office points out, however, its review of the Sheriff's file in this case did not lead to any charges against the officer. As the trial court found, the District Attorney General's Office determined that no prosecution would be pursued, and it "did not open its own file on the matter."[16] As such, the cited rules regarding misdemeanor case files are

---

[15] According to the facts stated in the opinion, when the officer who took possession of the notes at the scene "arrived at the police station, he made a copy of the notes, placed them in a personal file in his desk, and returned the originals to [a second officer]." *Griffin*, 821 S.W.2d at 922. That evening, the second officer made copies of the notes and delivered them to the decedent's wife. *Id.* The following day, the second officer "made a copy of the notes" that was given to the FBI, and he delivered the original notes to the attorney for the family. *Id.* Thus, it appears that the police department still retained the copies located in the personal file of the first officer. The opinion discusses the fact that the notes "were not placed in an official investigative file," *id.* at 923, but there is no discussion of the police department no longer possessing the notes.

[16] Mr. Beacham, the Assistant District Attorney General who served as the Office's Public Records Counsel and Request Coordinator and implemented the Office's Public Records Policy and Records Retention Policy, stated in his affidavit:

> This Office's Records Retention Policy does not apply, nor is intended to apply, to this temporary review of another agency's records. Such retention is not necessary in considering pre-arrest or pre-indictment charging determinations as a part of this Office's prosecutorial function. This Office is not the custodian of such records.
>
> Once an agency has completed an investigation *and a determination is made that further prosecution is warranted*, the investigative records in final form, typically referred to as a Case Summary or State Report, are presented to this Office by the law enforcement agency. *A criminal case file is then created and maintained by this Office.*

inapplicable to the facts of this case.

In conclusion, we discern no basis for Mr. Perrusquia's requests for injunctive relief under the Tennessee Public Records Act requiring the respondents to create or recreate records that do not otherwise exist. We affirm the trial court's denial of these requests for relief.[17]

### C.    Attorney Fees

Mr. Perrusquia also sought an award of attorney fees pursuant to the Tennessee Public Records Act in the event of reversal. Having decided that the surveillance video was properly withheld and that he was not entitled to injunctive relief, this issue is pretermitted. *See Memphis Publ'g Co. v. City of Memphis*, 2017 WL 3175652, at *10 ("In light of our holding that the records in IACP's possession are not subject to disclosure under the TPRA, the Petitioners are not entitled to an award of attorney's fees."); *Reguli v. Vick*, No. M2012-02709-COA-R3-CV, 2013 WL 5970480, at *4 (Tenn. Ct. App. Nov. 7, 2013) ("Ms. Reguli appeals the court's denial of her request for attorneys fees made pursuant to Tenn. Code Ann. § 10-7-505(g). Our determination that the records were properly withheld from disclosure renders this issue moot.")

### IV.    CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded. Costs of this appeal are taxed to the appellant, Jose Marcus Perrusquia, for which execution may issue if necessary.

_____
CARMA DENNIS McGEE, JUDGE

---

(emphasis added).

[17] This Court has noted that a governmental entity "cannot protect public records under the Act by shielding them behind a private attorney or otherwise by placing them in the possession of a private entity," as the record would remain public "regardless of its physical location." *Coats v. Smyrna/Rutherford Cnty. Airport Auth.*, No. M2000-00234-COA-R3-CV, 2001 WL 1589117, at *4 (Tenn. Ct. App. Dec. 13, 2001). The Act itself provides that "[a] governmental entity is prohibited from avoiding its disclosure obligations by contractually delegating its responsibility to a private entity." Tenn. Code Ann. § 10-7-503(a)(6). However, that is not the situation we have here.